139 F.3d 901
 11 NDLR P 354
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Sandra Lea BENEDICT, Plaintiff/Appellant,
v.
Eau Claire Public Schools, Wisconsin Education Ass'n
Council, Thomas Blount, Michael Burke, Defendants/Appellees.
 No. 97-2513.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 13, 1997.
Decided Feb. 10, 1998.
Rehearing Denied March 5, 1998.
 
 Appeal from the United States District Court for the Western District of Wisconsin. No. 95-C-0568-S John C. Shabaz, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. KENNETH F. RIPPLE, Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Sandra Benedict brought this lawsuit against her employer, Eau Claire Public School District ("ECPS"), alleging that ECPS violated the Age Discrimination in Employment Act of 1967 ("ADEA"), see 29 U.S.C. § 621 et seq., the Americans with Disabilities Act of 1990 ("ADA"), see 42 U.S.C. § 12101 et seq., and that ECPS engaged in retaliatory conduct because she filed her claims of discrimination. Ms. Benedict also alleged that union bargaining representatives Thomas Blount and Michael Burke and the Wisconsin Education Association Council ("WEAC"), a labor organization, breached their duty of fair representation in failing to prosecute her grievances against ECPS. The district court granted summary judgment for ECPS, holding that Benedict had failed to establish her prima facie cases of discrimination and retaliation; the court dismissed the complaints against the other defendants on a variety of grounds. Ms. Benedict, proceeding pro se on appeal, argues that the court erred in granting summary judgment. While this court lacks jurisdiction to review many of Ms. Benedict's allegations, three of her complaints survive. Because Ms. Benedict has failed to come forward with sufficient evidence to support her claims, we affirm.
 
 I. STATEMENT OF FACTS
 
 2
 Sandra Benedict was born in 1949, and taught for ECPS between 1972 and March 1996, when she took disability retirement. At all times relevant to her claims here, she was a member of WEAC, a labor organization that represents public school teachers in the Eau Claire Public School District. Tom Blount and Michael Burke are officers in labor organizations that provide grievance handling, collective bargaining and administrative services support for the WEAC affiliate in Eau Claire.
 
 
 3
 In 1986, Ms. Benedict was involved in a car accident that left her with a variety of maladies: chronic back, neck and shoulder pain; some instability of gait and a tendency to sway or fall to her right side, consistent with inner-ear abnormalities; post-traumatic stress syndrome with associated chronic muscle and ligament pain; heightened susceptibility to stress and anxiety; vocal problems of uncertain etiology; occasional blurring of vision and some loss of left eye nerve sensitivity; chronic headaches (perhaps migraine); and cognitive processing difficulties, with some short-term attention and concentration problems, possibly related to an auditory processing disorder. Several of the physicians who examined Ms. Benedict noted the lack of an obvious physical basis for her condition; the difficulty in arriving at any clear-cut diagnosis; and the possibility that Benedict's physical problems were, at least in part, psychologically driven.
 
 
 4
 Ms. Benedict took a medical disability leave during the fall of 1990 but returned in January 1991, when her doctors declared her fit to continue. She was placed at Boyd School, an older, multi-level site. This required that she occasionally climb stairs during the course of her day, a problem because of her difficulties with balance and stiffness. Moreover, friction developed between Ms. Benedict and her principals at Boyd; they were apparently unsympathetic to her condition and openly questioned the nature and existence of her ailments.
 
 
 5
 Because of her dissatisfaction at Boyd, Ms. Benedict requested a transfer to the single-level Putnam Heights School for the 1993-94 school year. She was interviewed in August 1993, by principal Jane Robertson-Johnson but was not hired. Ms. Benedict avers that Robertson-Johnson, "best friends" with one of the Boyd School principals, informed Ms. Benedict that she "needed to hire the best person for the job," and that she was afraid that hiring Benedict "would make her school go backwards."
 
 
 6
 ECPS Title I Director Rick Savolainen then assigned Ms. Benedict to teach in ECPS' "mobile classroom," a classroom on wheels that serviced five school sites. While the mobile classroom is a single-level unit, Ms. Benedict was also responsible for gathering and returning her students at each of the schools, thereby increasing her walking and stair climbing during the day. Moreover, the mobile classroom was apparently prone to rocking when the students were active, further increasing Ms. Benedict's discomfort. Once again she requested a transfer at the end of the school year--to single-level sites at Northwoods and Sherman Schools--but once again, she was not selected. Ms. Benedict contends that the spots were given to two teachers under forty years of age, with less seniority and experience. Following a mid-August 1994, meeting between ECPS officials, Blount, Burke and Ms. Benedict, she was assigned to teach half-time at Randall School and half-time at Lincoln School, two older multi-level sites, for the 1994-95 school year.
 
 
 7
 On June 28, 1995, Ms. Benedict attended a meeting at Randall at which Mary Seitz, the new principal, informed her that she intended to cut Benedict's Title I position from the curriculum for the forthcoming year. Ms. Benedict avers that Seitz explained that she was "only going to hire one Title I teacher for the following year" because she "did not want to spend the money on Title I programming," preferring instead "to spend [the money] on extracurricular activities." Ms. Benedict then applied for transfers to the Sherman and Locust Lane schools for the 1995-96 school year. When she contacted the ECPS Personnel Director in mid-August to check the status of her applications, however, she was told that the two positions had been filled and the appointments approved by the school board.
 
 
 8
 Ms. Benedict was informed by Savolainen that she would continue to split her time between Randall and Lincoln for the forthcoming year, but when she reported to Randall on August 21, 1995, Seitz told her to leave the campus and that she would no longer be working there. Benedict reported the incident to Savolainen, who told her that she had not been reassigned and that she should consider herself placed at Randall until he told her otherwise. When Ms. Benedict returned the next day, Seitz told her that she "did not want the other teachers to see [her] face" and that she should return to her room "and hide." Seitz's response to these allegations is only that they are "inaccurate." Curiously, ECPS Assistant Superintendent for Personnel Don Lillrose issued a document on September 7, 1995, entitled "Subject: Vacancies, Certified Posting No. 463." The notice, printed on ECPS letterhead, lists five Title I kindergarten through second grade teaching vacancies, full and part time, opening on an emergency basis at Randall for the 1995-96 school year. Applicants were instructed to "notify the Personnel Office in writing by September 24, 1995." It is not clear who, if anyone, was hired for the Randall teaching positions.
 
 
 9
 Ms. Benedict was subsequently transferred full-time to Lincoln School for the 1995-96 school year, where, she asserts, she was subsequently denied participation in a career-related workshop held on October 11-13. She also avers that the Lincoln principal requested Ms. Benedict's colleagues to put in writing their expectations of her.
 
 II. PROCEDURAL HISTORY
 
 10
 On May 13, 1994, Ms. Benedict filed a charge with the EEOC and the Equal Rights Division of the Wisconsin Department of Industry, Labor, and Human Relations ("ERD"), alleging that ECPS violated the Age Discrimination in Employment Act of 1967 ("ADEA"), see 29 U.S.C. § 621 et seq., and the Americans with Disabilities Act of 1990 ("ADA"), see 42 U.S.C. § 12101 et seq. She claimed that her 1993 transfer denial to Putnam Heights constituted age discrimination and a failure to accommodate her medical disabilities; and that she had been subjected to "ongoing intimidation" by her principals at Boyd School. On June 5, 1995, the EEOC issued its determination, finding no evidence of discrimination. Ms. Benedict filed a second charge with the EEOC on October 1, 1995, alleging that the termination by Mary Seitz of her Title I position at Randall was retaliatory for her prior EEOC filing. The EEOC dismissed her charge of retaliation on January 16, 1996, citing her lawsuit in federal court as grounds.
 
 
 11
 Ms. Benedict brought her case to federal court on August 8, 1995. She named ECPS, WEAC and several others as defendants, and raised numerous allegations:[1] she had been subjected to ongoing intimidation by her Boyd School principals following her return from disability leave; she had been excluded from career-related workshops while at Boyd School; the 1993 denial of her transfer requests to Putnam Heights and her subsequent transfer to the district's mobile classroom constituted age and disability discrimination; the 1994 denials of her transfer requests to the Northwoods and Sherman Schools, and the 1995 denials of her transfer requests to the Sherman and Locust Lane Schools were discriminatory; the 1995 termination of her Title I position at Randall School by principal Mary Seitz was retaliatory for her prior EEOC filing; and her October 1995, exclusion from a workshop at Lincoln school, and the Lincoln principal's request that her colleagues put their expectations of her into writing were discriminatory.
 
 
 12
 The district court granted summary judgment for ECPS on March 20, 1996, holding that Ms. Benedict had failed to establish her prima facie cases of discrimination and retaliation. Specifically, the court found: 1) Ms. Benedict had failed to demonstrate that she suffered from an impairment under the ADA that substantially limited her major life activities; and 2) she had not suffered a sufficiently adverse change in the terms or conditions of her employment to support her discrimination or retaliation claims. Following the district court's entry of final judgment, Ms. Benedict filed a timely notice of appeal.
 
 
 13
 The district court had subject matter jurisdiction under 28 U.S.C. § 1331; this court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.
 
 III. DISCUSSION
 Standard of Review
 
 14
 Although Ms. Benedict was represented by counsel in the district court, she is proceeding pro se on appeal. Her claims will therefore be construed liberally. See Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir.1994); Vanskike v. Peters, 974 F.2d 806, 807 (7th Cir.1992). It is not the role of an appellate court, however, to research and construct legal arguments otherwise available to a litigant and her attorneys, see Tyler v. Runyon, 70 F.3d 458, 466 (7th Cir.1995), nor is the court obligated to scour the record in search of facts or evidence to support the litigants' positions, see Hunt-Golliday v. Metropolitan Water Reclamation Dist., 104 F.3d 1004, 1010 & n. 2 (7th Cir.1997).
 
 
 15
 The standard of review for a grant of summary judgment is de novo; the record and all inferences drawn therefrom will be viewed in the light most favorable to Ms. Benedict, the non-movant. See Johnson v. City of Ft. Wayne, 91 F.3d 922, 930 (7th Cir.1996). A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). These standards are applied with "added rigor" in employment discrimination cases, "where intent and credibility are crucial issues." Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994) (internal quotation and citation omitted). Nonetheless, Ms. Benedict, as the non-movant, may not rely upon mere allegations, but must instead present specific facts to show that a genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where she bears the burden of proof on an issue, she must go beyond the pleadings, affirmatively demonstrating a genuine issue of material fact for trial. Ms. Benedict's own affidavit and deposition may constitute affirmative evidence in order to withstand a motion for summary judgment, see Courtney, 42 F.3d at 418, but the evidence relied upon must be "competent evidence of a type otherwise admissible at trial. Thus, a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996). Her burden is not carried if she fails to demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in her favor. See Johnson, 91 F.3d at 931; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 16
 On appeal, Ms. Benedict revisits the arguments she presented in the district court, contesting the district court's holding that she failed to establish her prima facie cases of discrimination and retaliation. For reasons discussed more fully in Section D below, only three of Benedict's allegations are properly before this court on appeal: her charges that the August 1993 denial of her transfer request from Boyd to Putnam Heights and her subsequent transfer to the mobile classroom violated the ADA and the ADEA; and that the 1995 termination of her Title I position at Randall by principal Mary Seitz constituted impermissible retaliation for her prior EEOC filing.
 
 A. Disability Discrimination
 
 17
 Ms. Benedict contends that her "physical impairments," specifically, "her back, neck and walking problems" required that she "be accommodated for physical disability." She argues that her chronic injuries made it "difficult" for her to maintain her balance and negotiate the stairways at multi-level school sites and that the rocking of the mobile classroom aggravated her balance and headache problems. Ms. Benedict concludes that the denial of her transfer application to Putnam Heights (the school of her choice) and her subsequent placement in the district's mobile classroom constituted a failure to accommodate her medical disabilities in violation of the ADA.
 
 
 18
 The ADA provides that an employer must make "reasonable accommodations" to a qualified individual with known physical or mental limitations. 42 U.S.C. § 12112(b)(5)(A); see also Weiler v. Household Fin. Corp., 101 F.3d 519, 525 (7th Cir.1996). Denying employment opportunities to a qualified employee because of a need to accommodate her disability is likewise prohibited. See 42 U.S .C. § 12112(b)(5)(B); Bultemeyer v. Fort Wayne Community Sch., 100 F.3d 1281, 1284-87 (7th Cir.1996). To warrant protection under the ADA, an individual must first suffer from a "disability," defined in relevant part as a "physical or mental impairment that substantially limits" one or more of an individual's major life activities, 42 U.S.C. § 12102(2)(A), such as walking, seeing, hearing, speaking or working, see 29 C.F.R. § 1630.2(i ); or being regarded as having such a disability, see 42 U.S.C. § 12102(2)(C); 29 C.F.R. §§ 1630.2(g)(3), (l )(1)-(3); Harrington v. Rice Lake Weighing Sys., Inc., 122 F.3d 456, 459 (7th Cir.1997); Johnson v. American Chamber of Comm. Publishers, Inc., 108 F.3d 818, 819-20 (7th Cir.1997). "Substantially limits," in turn, means that an individual is "unable to perform a major life activity" or is "significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii). It is clear, then, that not every impairment that affects an individual's life is a "substantially limiting impairment." Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1454 (7th Cir.1995). "[T]he impairment must be a significant one." Id.; see also Weiler, 101 F.3d at 524-25.
 
 
 19
 In order to establish her "failure to accommodate" claim against ECPS, the burden falls to Ms. Benedict to present specific facts and admissible evidence showing: 1) she is statutorily disabled; 2) ECPS was aware of the disability; and 3) she was qualified for the position in question. See Best v. Shell Oil Co., 107 F.3d 544, 547-48 (7th Cir.1997). Ms. Benedict has failed to carry her burden. To establish that she is disabled as defined under the ADA, Ms. Benedict submitted eight letters written by physicians and a physical therapist to various parties between 1988 and 1995, all of which are objectionable as hearsay. See Fed.R.Evid. 801(c); Bombard, 92 F.3d at 562, 564. As such, they are insufficient to withstand a motion for summary judgment. See McKenzie v. Illinois Dep't of Trans., 92 F.3d 473, 484 (7th Cir.1996). This court explained in Bombard v. Fort Wayne Newspapers, Inc., that Rule 803(4) of the Federal Rules of Evidence "does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient." 92 F.3d at 564.
 
 
 20
 It is unclear from the grant of summary judgment whether or to what extent the district court considered the letters Ms. Benedict submitted in support of her claim. Though disfavored, some courts have occasionally considered hearsay in opposition to motions for summary judgment under certain limited circumstances. See Eisentstadt v. Centel Corp., 113 F.3d 738, 742-43 (7th Cir.1997) (citing cases). Even if the district court had considered these letters, however, they would be insufficient to establish that Ms. Benedict suffers from a substantially limiting mental or physical impairment. See 42 U.S.C. § 12102(2)(A); 29 C.F.R. §§ 1630.2(i ), (j)(1)(i)-(ii); Roth, 57 F.3d at 1454-55. Some of the more urgent medical assessments Ms. Benedict cites predate her 1991 return to work. Her physician's 1990 return-to-work letter notes her "many vague neurologic symptoms" and the difficulty of arriving at any concrete diagnosis, admitting that "extensive evaluation" revealed no "significant neurologic defects." A letter in which a physical therapist cites Benedict's history of balance and equilibrium difficulties is contradicted by another letter in which a physician concludes that Ms. Benedict has "normal function of the balance system." Only two of the physicians who wrote letters following Ms. Benedict's return to work mention her stair climbing problems. One notes that she has "some reduced physical tolerance because of deconditioning"; the other, that because Benedict suffers from a condition known as Meniere's disease, her problems with headaches and balance are aggravated by stair climbing and rocking. None of the five letters that were written following Ms. Benedict's return to work can reasonably be read as a claim that her condition rendered her unable to teach, walk, climb stairs, or that she was otherwise significantly restricted in the performance of those activities. Indeed, even the letters that predate her return to work note "an essentially normal neurological examination," "a normal clinical examination," "no obvious disease," and "a review of her performance evaluations at school do [sic] not suggest any major difficulties in job performance."
 
 
 21
 The crux of Ms. Benedict's complaint is not that her impairments leave her substantially limited with respect to working, walking or stair climbing; rather, it is that she is substantially limited with respect to excessive walking or stair climbing between classes. This is insufficient: the impairment must significantly restrict Ms. Benedict's ability to perform "a class of jobs or a broad range of jobs in various classes," 29 C.F.R. § 1630.2(j); see also Weiler, 101 F.3d at 525; Homeyer v. Stanley Tulchin Assoc., 91 F.3d 959, 961 (7th Cir.1996), or some other major life activity, see, e.g., Penny v. United Parcel Serv., 128 F.3d 408 (6th Cir.1997) (walking or stair climbing even with "moderate difficulty or pain" does not rise to the level of a disability) (collecting cases); Robinson v. Global Marine Drilling Co., 101 F.3d 35 (5th Cir.1996) (stair climbing that aggravated plaintiff's asbestosis did not qualify as major life activity); Weiler, 101 F.3d at 524-26 (heightened anxiety and stress, migraines and depression triggered by an unpleasant supervisor were not substantial limitations on a major life activity); Kelly v. Drexel Univ., 94 F.3d 102 (3d Cir.1996) (plaintiff with "visible and apparent" limp who had difficulties climbing stairs was not substantially limited in a major life activity) (collecting cases); Hankins v. The Gap, Inc., 84 F.3d 797 (6th Cir.1996) (employer was not necessarily required under ADA to transfer employee to other locales simply because of worksite-induced migraine headaches); Roth, 57 F.3d at 1454-56 (physician who complained of visual impairment, headaches and fatigue not entitled under ADA to the rotation of his choice); Hunt v. Boyd Gaming Corp., No. CIV.A. 96-1909, 1997 WL 369617 (E.D.La. June 30, 1997) (post-traumatic stress syndrome insufficiently limiting where plaintiff was allegedly unable to perform a single, particular job); Marschand v. Norfolk & W. Ry. Co., 876 F.Supp. 1528 (N.D.Ind.1995) (same); aff'd, 81 F.3d 714 (7th Cir.1996). An inability to perform one particular job, a portion of one particular job for a single employer, or increased discomfort while performing a major life activity does not constitute a substantial limitation on the ability to perform such activities. See Harrington, 122 F.3d at 460; Weiler, 91 F.3d at 524. As this court has recognized, "major life activity" cannot be interpreted to mean "working at the specific job of one's choice ." Roth, 57 F.3d at 1455 (internal quotation and citation omitted).
 
 
 22
 Neither does the record support the inference that Ms. Benedict's transfer request was denied because she was perceived to be disabled. See 42 U.S.C. § 12102(2)(C); 29 C.F.R. §§ 1630.2(g)(3), (l )(1)-(3). An impairment, physical or mental, is not necessarily an impairment that significantly restricts a major life activity, see Weiler, 101 F.3d at 523-25; Roth, 57 F.3d at 1454, nor can the ADA be considered "a general protection of medically afflicted persons," Christian v. Saint Anthony Med. Ctr. ., Inc., 117 F.3d 1051, 1053 (7th Cir.1997). It was intended to protect those with disabilities or who are incorrectly regarded as having disabilities. Where the employer discriminates against an individual who is ill, who is mistakenly thought to be ill, or who may even be permanently ill but is not disabled, there is no violation of the Act. See Harrington, 122 F.3d at 460; Christian, 117 F.3d at 1053; accord, Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 806-07 (5th Cir.1997). Viewed in this light, the record on summary judgment does not suggest that Putnam Heights principal Robertson-Johnson perceived Ms. Benedict to be substantially limited in her ability to perform a major life function, whatever else she may have thought. See 42 U.S.C. §§ 12102(2)(C); 29 C.F.R. §§ 1630.2(g)(3), (l )(1)-(3); see also Christian, 117 F.3d at 1053; Russell v. Acme-Evans Co., 51 F.3d 64, 68, 70-71 (7th Cir.1995) (failure to develop evidence doomed plaintiff's claim).
 
 
 23
 It is important to remember that there are "varying degrees of impairments as well as varied individuals who suffer from the impairments." Homeyer, 91 F.3d at 962. Indeed, as the interpretive commentary to the ADA regulations makes clear, "Multiple impairments that combine to substantially limit one or more of an individual's major life activities also constitutes a disability.... Some impairments may be disabling for particular individuals but not for others, depending on ... the presence of other impairments that combine to make the impairment disabling ...." 29 C.F.R. Pt. 1630, app. § 1630.2(j). This possibility requires, as we have suggested elsewhere, that the courts unflaggingly engage in a careful examination of each of these "fact-intensive cases." Skouby v. Prudential Ins. Co. of Am., 130 F.3d 794, 795 (7th Cir.1997). Based on the record before this court, however, Ms. Benedict has failed to establish that the constellation of problems from which she suffers renders her significantly restricted in the performance of any major life activity. See Weiler, 101 F.3d at 523-25; Bombard, 92 F.3d at 564. Consequently, ECPS was under no obligation imposed by the ADA to accommodate her ailments by accepting her transfer requests to Putnam Heights, from the mobile classroom, or anywhere else.
 
 B. Age Discrimination
 
 24
 Ms. Benedict charged that ECPS denied her transfer from Boyd to Putnam Heights based on age discrimination.
 
 
 25
 The ADEA makes it unlawful for an employer to discriminate against an employee 40 years of age or older with respect to the employee's "compensation, terms, conditions or privileges of employment" based on the employee's age. 29 U.S.C. § 623(a)(1); id. at § 631(a). To sustain her age discrimination claim, Ms. Benedict must show that her age was a "determining factor" in the denial of her application to Putnam Heights, that "but for" her age, her 1993 transfer application would have been accepted. Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir.), cert. denied, 519 U.S. 866, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996). She chose to proceed through the indirect, burden-shifting method, which requires that she demonstrate: 1) membership in a statutorily protected class (40 years or older); 2) she was performing satisfactorily; 3) that despite her satisfactory performance she suffered a materially adverse employment action; and 4) others younger than she were treated more favorably. See Rabinovitz v. Pena, 89 F.3d 482, 486 (7th Cir.1996); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 26
 Ms. Benedict cannot satisfy the third element of the McDonnell Douglas test, that she suffered a sufficiently adverse employment action. Thus, the burden of production never shifts to ECPS to come forward with a legitimate, non-discriminatory reason for the transfer denial. See Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir.1997). A lateral transfer (or the denial of a voluntary lateral transfer request), without such additional indicators as a pay cut, significant loss of benefits, or diminished material responsibilities--all of which are absent here--is not a sufficiently adverse employment action to warrant ADEA protection. See, e.g., Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir.1996); Flaherty v. Gas Research Inst., 31 F.3d 451, 456-57 (7th Cir.1994); Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 135-36 (7th Cir.1993); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir.1989).
 
 
 27
 Ms. Benedict's transfer to the mobile classroom was not a sufficiently adverse employment action to warrant ADEA protection. Consequently, the district court did not err in granting ECPS' motion for summary judgment based on this claim.
 
 C. Retaliation
 
 28
 Ms. Benedict alleges that the termination of her Title I position at Randall and her subsequent transfer to Lincoln School were retaliatory for filing her prior charges of age and disability discrimination. See 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a).
 
 
 29
 This court has recently noted that the law does not take a "laundry list" approach to retaliation, in part because "its forms are as varied as the human imagination will permit." Knox v.. Indiana, 93 F.3d 1327, 1334 (7th Cir.1996). Evidence of retaliation has been found where an employee was given a lateral transfer, without reduction in pay or benefits, that nevertheless placed her in a sort of workplace limbo, stripped of substantial job responsibilities, assignments, authority and business amenities, see Collins v. Illinois, 830 F.2d 692, 702-06 (7th Cir.1987) (collecting cases); where an employee was subjected to a vicious, unchecked campaign of gossip and harassment by her co-workers, who made no bones about being out to "get her," Knox, 93 F.3d at 1334-35; where a supervisor was permanently transferred to an out-of-state office for failing to induce a subordinate to drop her complaints of harassment, see McDonnell v. Cisneros, 84 F.3d 256, 261-63 (7th Cir.1996); and where an employee suffered a dramatic erosion in the complexity and variety of her job responsibilities, see Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir.1995).
 
 
 30
 To establish a claim of retaliation, Ms. Benedict must show: 1) she engaged in protected activity; 2) she suffered an adverse employment action subsequent to the protected activity; and 3) the two are causally related. See Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir.1996); Johnson v. University of Wis., 70 F.3d 469, 479 (7th Cir.1995). Causality in this context has been construed to mean merely that "the protected activity and the adverse action were not wholly unrelated." Hunt-Golliday, 104 F.3d at 1014 (internal quotation and citation omitted); Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1315 n. 4 (7th Cir.1989). While temporal proximity is circumstantial evidence of such a link, see McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796-97 (7th Cir.1997); Hunt-Golliday, 104 F.3d at 1014; Rabinovitz, 89 F.3d at 489, the plaintiff must nevertheless demonstrate that the employer would not have taken the forbidden action "but for" the protected expression, Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1146 (7th Cir.1997); McKenzie, 92 F.3d at 483.
 
 
 31
 Element one of Ms. Benedict's prima facie case is easily satisfied, since there is no question that filing a charge with the EEOC is protected activity. See, e.g., Smart, 89 F.3d at 440-41. Beyond this point, however, Ms. Benedict's effort to establish her prima facie case founders: her transfer to Lincoln, as noted above, is insufficiently adverse to sustain Ms. Benedict's claim of workplace retaliation. See Williams, 85 F.3d at 274; Flaherty, 31 F.3d at 456-57; Crady, 993 F.2d at 135-36; Spring, 865 F.2d at 886.
 
 
 32
 Ms. Benedict faces other problems with respect to the termination of her Title I position at Randall. Termination is an unmistakably adverse employment act. See, e.g., Gleason, 118 F.3d at 1146; McClendon, 108 F.3d at 796. There is evidence that the episode at Randall was acrimonious; there is even evidence that Seitz's reason for terminating Ms. Benedict's position, "because she did not want to spend the money on Title I programming, but would prefer to spend it on extracurricular activities," was phony. In this regard, the September 7, 1995, posting of vacancies opening at Randall on an emergency basis for the 1995-96 school year is particularly troubling. Nevertheless, no one--not Seitz, not ECPS Assistant Superintendent for Personnel Don Lillrose, not Title I Director Rick Savolainen, not anyone--was deposed about the listing, nor were interrogatories submitted to those who might have had knowledge of the incident. See Monroe v. Children's Home Ass'n of Ill., 128 F.3d 591, 593-94 (7th Cir.1997); Russell, 51 F.3d at 68, 70-71. Moreover, Ms. Benedict's filing and the Randall termination took place thirteen months apart; the remoteness of the two events, while not dispositive of a lack of causality, is "counter-evidence" of such a connection. Johnson, 70 3d at 480; see also McKenzie, 92 F.3d at 485. Neither does the record suggest any basis for concluding that Seitz, who was the "new" Randall principal in 1995, had some reason to retaliate against Ms. Benedict. While Seitz's characterization of Ms. Benedict's allegations as merely "inaccurate" is unsatisfying, to say the least, it does not lead ineluctably to the conclusion that the termination was undertaken in retaliation for Ms. Benedict's prior EEOC filing. Without some evidence suggesting that the termination of Ms. Benedict's Title I position was connected to her EEOC filing, the district court did not err in granting ECPS' motion for summary judgment.
 
 D. Prior Resort to Administrative Remedies
 
 33
 Ms. Benedict's federal complaint enumerated a range of charges. Other than the claims discussed above, however, her allegations were not properly before the district court and thus, are not properly before this court.
 
 
 34
 As a general rule, an employee who files a discrimination complaint in federal court cannot raise claims that were not included in her administrative charges. See Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir.1994). An employee filing an administrative charge need not allege with relentless specificity every fact or claim that forms the basis for her complaint, see Taylor v. Western & Southern Life Ins. Co., 966 F.2d 1188, 1195 (7th Cir.1992), in part because filing a charge of discrimination with the EEOC is not a jurisdictional prerequisite, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); Cheek, 31 F.3d at 500. Nonetheless, an allegation raised in a federal discrimination complaint must be "like or reasonably related" to the allegations raised in the charges: that is, there must be a "reasonable relationship" between them, such that "the claim in the complaint can reasonably be expected to grow out of" the subsequent EEOC investigation. Id .; see also Oates v. Discovery Zone, 116 F.3d 1161, 1168 n. 7 (7th Cir.1997); McKenzie, 92 F.3d at 481-82; Harper v. Godfrey Co., 45 F.3d 143, 147-48 (7th Cir.1995); Weiss v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir.1993). At a minimum, the charge and the complaint must "describe the same conduct and implicate the same individuals." Cheek, 31 F.3d at 501; see also McKenzie, 92 F.3d at 481; Harper, 45 F.3d at 148.
 
 
 35
 Ms. Benedict failed to raise her 1995-96 transfer denials in her October 1, 1995, EEOC charge of retaliation, though they apparently took place shortly before her filing. Because there is no indication that these incidents were "like or reasonably related" to the denial of her Title I position at Randall, McKenzie, 92 F.3d at 481, 483; Harper, 45 F.3d at 148, she has failed to exhaust her administrative remedies with respect to these incidents, see Cheek, 31 F.3d at 500. They were thus not properly raised in the district court.
 
 
 36
 Ms. Benedict also complains of her treatment at Lincoln School during the fall of 1995: she was excluded from a mid-October 1995, career-enhancing workshop, and her principal requested that Ms. Benedict's colleagues put their expectations of her into writing. Given the broad scope of conduct this circuit is willing to consider retaliatory, it is possible (without here deciding) that her treatment could be considered sufficiently adverse to warrant federal protection: placing an employee on the back of the workplace shelf is not necessarily conduct that falls beyond the federal reach. See, e.g., Dahm, 60 F.3d at 257; Collins, 830 F.2d at 702-06; see also Strother v. Southern Calif. Permanente Med. Group, 79 F.3d 859 (9th Cir.1996) (exclusion from a series of seminars, meetings and administrative positions sufficiently adverse). Moreover, the temporal proximity of her treatment to the August filing of her federal complaint and the October filing of her administrative charges might be sufficient at the summary judgment phase to permit an inference of causality. See McClendon, 108 F.3d at 796-97; Rabinovitz, 89 F.3d at 489. Nonetheless, there is nothing to suggest that but for her filings she would not have been treated as she was, see Gleason, 118 F.3d at 1146; McKenzie, 92 F.3d at 483, or that her treatment implicated "the same individuals" identified in prior incidents, Cheek, 31 F.3d at 501; see also McKenzie, 92 F.3d at 481. Without evidence that the Lincoln claim was like or reasonably related to her prior charges, see Cheek, 31 F.3d at 500-01, Ms. Benedict has failed to exhaust her administrative remedies, the condition precedent to bringing an allegation of discrimination into federal court, see McKenzie, 92 F.3d at 482.
 
 
 37
 Finally, employees claiming discrimination must timely file their charges: in this case, because Ms. Benedict cross-filed her EEOC charges with the ERD, within three hundred days of the allegedly discriminatory incident. See 29 U.S.C. § 626(d)(2); 42 U.S.C. § 12117(a) (incorporating Title VII's charge-filing requirements); Huels v. Exxon Coal U.S.A., Inc., 121 F.3d 1047, 1049 (7th Cir.1997) (ADA); Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267-69 (7th Cir.1996) (ADEA). Ms. Benedict filed her charge of age and disability discrimination on May 13, 1994: the three-hundred day period reaches back only until mid-July, 1993. Her treatment at Boyd is thus untimely raised. Neither has Ms. Benedict carried her evidentiary burden to come forward with admissible evidence that her treatment was part of a continuing violation. See Huels, 121 F.3d at 1049-50; Russell, 51 F.3d at 68, 70-71.
 
 CONCLUSION
 
 38
 Many of Ms. Benedict's allegations are barred from appellate review for the reasons noted above. With respect to the claims that are properly before this court, Ms. Benedict has failed to establish that she suffers from a disability that substantially limits her participation in a major life activity or that she was the victim of age discrimination. Ms. Benedict has likewise failed to come forward with sufficient evidence to suggest that ECPS retaliated against her for her prior EEOC filings. Based on the record before this court, then, the district court did not err in granting summary judgment for ECPS. The decision of the district court is therefore AFFIRMED.
 
 AFFIRMED
 
 
 [1]
 Benedict alleged that WEAC and union bargaining representatives Tom Blount and Michael Burke breached their duty of fair representation by not assisting her in prosecuting her grievances against ECPS. Benedict's action against WEAC was dismissed without prejudice because she failed to serve the organization with process. See Fed.R.Civ.P. 4(m); Omni Capital Int'l, Ltd. v. Rudolph Wolff & Co., Ltd., 484 U.S. 97, 104-05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). This court thus lacks jurisdiction under 28 U.S.C. § 1291 to consider that claim. See Perry R. Pennington Co. v. T.R. Miller Co., Inc., 994 F.2d 390, 392-93 (7th Cir.1993). Similarly, because Benedict abandoned her claims against Blount and Burke in a stipulation entered by the district court pursuant to Fed.R.Civ.P. 41(a), there is no need to further consider her appeal against these defendants
 Finally, Ms. Benedict filed claims of discrimination against numerous ECPS employees in their individual capacities, including Savolainen, Robertson-Johnson, and her former Boyd School principals. The district court properly dismissed her claims against these defendants for failure to state a claim under Fed.R.Civ.P. 12(b)(6), because they are not statutory employers. See EEOC v. AIC Security Investigation, Ltd., 55 F.3d 1276, 1282 (7th Cir.1995). Her claims against these defendants in their individual capacities are thus not considered here.