Margaret CHRISTIAN, Plaintiff–
Appellant,

v.

ST. ANTHONY MEDICAL CENTER,
INC., Defendant–Appellee.

No. 96–3986.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1997.

Decided July 1, 1997.

Terry R. Boesch, Amy N. Kendt (argued), Valparaiso, IN, for Plaintiff–Appellant.

Robert J. Dignam (argued), Spangler, Jennings & Dougherty, Merrillville, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and EVANS, Circuit Judges.

POSNER, Chief Judge.

Margaret Christian was fired by St. Anthony's Medical Center, she claims in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* She has a condition known as hypercholesterolemia, meaning an excessive amount of cholesterol in her blood (her cholesterol count is 319 milligrams, which is far above normal), and she claims that St. Anthony's fired her because of her condition. The magistrate judge granted summary judgment for St. Anthony's, precipitating this appeal. A number of issues are

raised, but only two merit discussion. The first is whether the treatment of a condition that is not itself disabling can ever count as a disability under the Act, and we think that it can. Obviously, having high cholesterol is not in itself disabling; it does not prevent a person from engaging in any of the activities of. living and working; it is wholly unlike blindness or paraplegia or the other conventional disabilities that trigger the protection of the ADA. But it is life-threatening, albeit only in the long term, and if a medical condition. that is not itself disabling nevertheless requires, in the prudent judgment of the medical profession, treatment that is disabling, then the individual has a disability within the meaning of the Act, even though the disability is, as it were, at one remove from the condition. We cannot find a case on the question, but the answer seems obvious—maybe that's why there are no cases; in *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907 (11th Cir.1996), for example, it was simply assumed that chemotherapy treatment for a cancer not itself shown to be disabling could be disabling within the meaning of the Act. In its early stages cancer is usually not disabling, but aggressive treatment of a cancer at an early stage may be, and if it is, the protections of the Act are triggered. And we suppose, coming a little closer to this case, that if the aggressive, disabling treatment had been recommended but not yet been commenced, the patient could complain if his employer fired him because it anticipated the disability that would result from the treatment; for on these assumptions the disability would be the cause of his being fired.

The plaintiff claims that this is her situation, that she was fired because the defendant anticipated that she would undergo a disabling treatment—namely pheresis (or aphereisis), in which the blood is drained from the patient's body, cleansed of its cholesterol, and put back into the patient. This treatment, which would have continued for the rest of the plaintiff's life, would have required the defendant to allow the plaintiff to take an extra day or two off each month to undergo the treatment.

■ If Christian's employer fired her because the indicated medical treatment for her condition would have required that she have this extra time off, the employer would be violating the ADA, at least prima facie, though we wish to note two qualifications. The first is that the disabling treatment be truly necessary, and not merely an attractive option. For suppose a doctor tells his middle-aged patient that unless he "slows down," his longevity will be impaired—and the patient then demands that his employer allow him to work only three days a week. The prescribed "treatment" would be disabling, all right, but it would not require an accommodation by the employer, for the condition being treated would be too vague and remote and the treatment too conjectural. Second, an anticipated disability does not trigger a duty of accommodation if what is anticipated is a consequence of the employee's voluntary choices. It is not a violation of the Act to fire an employee who because of his known propensity to engage in recklessly dangerous activities, such as riding a motorcycle without a helmet on, has a more than average likelihood of becoming disabled.

Coming back to this case, we point out that it is extremely unlikely, to say the least, that pheresis *was* the indicated treatment for the plaintiff's condition. Tens of millions of Americans have high cholesterol; few have their blood drained every month—apparently none in Chicago, since the plaintiff's plan was for the required equipment to be flown in from Boston every month for her treatment. In fact, she has never undergone the treatment, and her treating physician has prescribed drugs and exercise for her, not pheresis. It is an example of our earlier point about the difference between optional and required treatments. But this is an aside; even if it were certain that Christian's condition required pheresis, she has no claim under the ADA.

■ For she does not argue that she was fired because pheresis would require her to miss some work time. She claims not to know why she was fired (she rejects the employer's contention that it was because she falsified her time card), but conjectures that it was either because of the stigma of having a serious medical condition or because of the cost of the treatment to St. Anthony's employee health plan. She believes in other

words that the Americans with Disabilities Act protects an employee from being fired because of illness. It does not. This is a subtle but important point and we wish to be as emphatic about it as we can. The Act is not a general protection of medically afflicted persons. It protects people who are discriminated against by their employer (the only form of disability discrimination at issue in this case) either because they are in fact disabled or because their employer mistakenly believes them to be disabled. If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation. E.g., *Bridges v. City of Bossier*, 92 F.3d 329 (5th Cir.1996) (hemophilia).

Suppose that the plaintiff had a skin disease that was unsightly and also very expensive to treat, but neither the disease itself nor the treatment for it would interfere with her work. And suppose her employer fired her nevertheless, either because he was revolted by her disfigured appearance or because the welfare plan that he had set up for his employees was unfunded and he didn't want to incur the expense of the treatment that she required. Either way he would not be guilty of disability discrimination, cf. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611–14, 113 S.Ct. 1701, 1706–08, 123 L.Ed.2d 338 (1993), though in the second case, if the welfare plan were an ERISA plan, he might be guilty of violating ERISA. *Id.* at 612, 113 S.Ct. at 1707; *Salus v. GTE Directories Service Corp.*, 104 F.3d 131 (7th Cir.1997); see 29 U.S.C. § 1140. It would be otherwise if he believed that the plaintiff's skin disease was disabling, even if it was not; for the Act protects persons who are not disabled from being discriminated against on the basis of the false beliefs of their employers. 42 U.S.C. § 12102(2)(C); *Johnson v. American Chamber of Commerce Publishers, Inc.*, 108 F.3d 818 (7th Cir.1997); *Vande Zande v. Wisconsin Dept. of Administration*, 44 F.3d 538, 541 (7th Cir.1995). By the plaintiff's own account, however, the defendant's motive in firing her had nothing to do with any disability resulting directly or indirectly from her high cholesterol. The motive was either a dislike of a person with "bad blood" or a belief that the treatment for the condition would take a big bite out of the employer's profits; neither motive is necessarily or here related to an actual or perceived disability.

Affirmed.