PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4684

_____

ED SULIMA,
                    Appellant

v.

TOBYHANNA ARMY DEPOT;
JOHN MCHUGH,
SECRETARY OF THE ARMY,
U.S. DEPARTMENT OF THE ARMY;
DEFENSE SUPPORT SERVICES, LLC, dba DS2

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 06-cv-00415)
District Judge: Honorable Richard P. Conaboy

_____

Argued January 29, 2010


Before:  RENDELL and JORDAN, Circuit Judges,

and PRATTER, <u>District</u> <u>Judge</u>*

(Filed: April 12, 2010)
_____

Cynthia L. Pollick, Esq.    **[ARGUED]**
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640
    *Counsel for Appellant*

Kate L. Mershimer, Esq.    **[ARGUED]**
Office of the United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Jennifer Walsh, Esq.
Ufberg & Associates
310 Penn Avenue
Scranton, PA 18503
    *Counsel for Appellants*
    *Tobyhanna Army Depot,  John McHugh, U.S. Dept. Army,*
    *Secretary of the Army*

_____

  *    Honorable Gene E.K. Pratter, Judge of the United States
       District Court for the Eastern District of Pennsylvania,
       sitting by designation.

Stephanie E. Lewis, Esq.   **[ARGUED]**
Andreas N. Satterfield, Jr., Esq.
Martin J. Saunders, Esq.
Jackson Lewis
55 Beattie Place, Suite 800
Greenville, SC 29601
   *Counsel for Appellant*
   *Defense Support Services, LLC, dba DS2*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

Ed Sulima appeals from the District Court's Orders granting summary judgment with respect to his claims under the Americans with Disabilities Act ("ADA"), in favor of Defense Support Services, LLC (known as "DS2"), and dismissing his claims under the Rehabilitation Act ("RA"), which were brought against several federal government defendants, including Tobyhanna Army Depot, the Secretary of the Army, and the United States Department of the Army (collectively, "Tobyhanna"). Throughout most of 2005, Sulima was employed by DS2 and working at the Tobyhanna Army Depot pursuant to a contract between Tobyhanna and DS2. After Sulima took part in a voluntary layoff in December of 2005, he brought suit against DS2 and Tobyhanna under the ADA and RA. Specifically, Sulima claims that he was forced into the layoff because he was disabled, was regarded as disabled by his employer, or was retaliated against for requesting an

3

accommodation for a disability that he believed in good faith existed.

The basis for Sulima's claims lies in the side effects of medications he was taking to treat his obesity and sleep apnea. Thus, we must consider whether the meaning of "disability" under the ADA can encompass an impairment resulting solely from the side effects of medication, whether or not the underlying health problems are disabling. The Court of Appeals for the Seventh Circuit has considered this issue in detail, and held that these side effects may, under certain conditions, constitute a disabling impairment under the ADA. *See Christian v. St. Anthony Med. Ctr.*, 117 F.3d 1051, 1051-52 (7th Cir. 1997). The District Court adopted the reasoning of the Seventh Circuit, but found that the side effects experienced by Sulima did not constitute a disabling impairment. For substantially the same reasons as the District Court, we will adopt the *Christian* standard. We agree with the District Court that Sulima has not satisfied his burden under this standard, and we will therefore affirm the orders of the District Court.

## I. Background

According to the opinion of his treating physician, Dr. Guy Michael Fasciana, Sulima is morbidly obese. Sulima also suffers from sleep apnea, likely related to his obesity. The sleep apnea causes him to occasionally stop breathing for short periods while sleeping, at times requiring him to use a machine to help him breathe while he sleeps. After Dr. Fasciana noticed signs of sleep apnea in August 2005, he referred Sulima to Dr. John Della Rosa, who confirmed the sleep apnea diagnosis and

spoke with Sulima about possible surgical options to reduce its effects. Dr. Della Rosa recommended that Sulima lose weight in order to reduce the severity of the sleep apnea.

Sulima had been taking weight-loss medications for several years. It is unclear exactly which medications Sulima was taking in late 2005, the time period at issue in this appeal. However, Sulima had been taking weight-loss medications for several years, including Xenical, a medication that is now sold over the counter as "Alli." Xenical assists in weight loss by binding some of the fat in a person's diet, preventing it from being absorbed into the body. Because the fat is not absorbed, it leaves the body as an oily discharge in the stool. After Sulima consulted with Dr. Della Rosa, he began taking Lactulose, a laxative sometimes sold under the brand name "Kristalose." Sulima received this medication either as samples from Dr. Fasciana or as a prescription. In addition, Dr. Fasciana also prescribed diethylpropion, known by its brand name, "Tenuate," as an appetite suppressant.

In January 2005, while employed by DS2, Sulima began working at Tobyhanna Army Depot in the position of Electronics Technician II, a position created through a United States Air Force contract with DS2 to provide workers to Tobyhanna. The medication that Sulima began taking in the latter months of 2005 caused him to need to use the restroom frequently.

On October 28, 2005, the DS2 team leader, Joe Johnson, observed Sulima leaving his work station several times, remaining in the restroom for a total of approximately two hours

5

during his shift. When Johnson spoke with Sulima about the frequent breaks, Sulima told him that they were due to a medication he was taking. Johnson told Sulima to get a note from a doctor, and the next day Sulima brought in a note from Dr. Fasciana, dated October 29, which said: "Due to gastrointestinal disorder Ed [Sulima] may need to use the restrooms more than the usual." App. 476. After Sulima brought in the note, his supervisors prepared a sheet of two written questions regarding his medical condition. In response to the questions, Sulima wrote that he was not sure how long he would need the medication, but that he was "going back to my doctor to see if he can give me different medication." App. 477.

After Sulima continued to take frequent long breaks, a Tobyhanna supervisor asked DS2 to transfer Sulima to a different work area. When made aware of the transfer request, Sulima spoke with Dr. Fasciana and brought DS2 a note, dated December 9, which indicated that Sulima's medication had been changed and he was now able to work without needing frequent long breaks. DS2 nonetheless decided to transfer Sulima, but there was no other work area within Tobyhanna available at that time. Sulima accepted a layoff on December 12, 2005, in advance of a general round of layoffs scheduled to take effect in January 2006. Although when he was laid off Sulima was told that he was eligible to be rehired, he was not contacted again by DS2, and he did not inquire about similar advertised positions that later became available. He is currently employed elsewhere.

6

Sulima filed a complaint in the District Court, alleging several violations of the ADA and RA. The complaint named both DS2 and Tobyhanna as defendants: DS2 as Sulima's primary employer and Tobyhanna as a "joint employer." The complaint alleged that Sulima had been transferred and subsequently laid off because he was disabled, or, in the alternative, because his employers regarded him as disabled. Sulima also claimed that he was transferred by DS2 in retaliation for having requested extra time to use the restroom during work hours, an accommodation he claims he was entitled to request because he believed, in good faith, that he had a disability within the meaning of the ADA.

Tobyhanna moved to dismiss or for summary judgment on the grounds that it was not Sulima's "joint employer," and therefore not a responsible party under the ADA. The District Court agreed, granting the motion in its Order of April 11, 2008. DS2 subsequently moved for summary judgment on the merits. The District Court granted this motion in its Order of October 30, 2008, finding that Sulima had "not produced sufficient evidence" to succeed in the litigation. App. 40. That order also denied Sulima's motion to reinstate Tobyhanna as a defendant, ruling that even if the District Court were to find that Tobyhanna jointly employed Sulima, Sulima's claims would fail on their merits for the same reasons that Sulima's claims against DS2 failed. Sulima appeals.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over these ADA and RA claims pursuant to 28 U.S.C. § 1331. We have jurisdiction

7

of Sulima's appeal from the District Court's final order of October 30, 2008, granting summary judgment to DS2, under 28 U.S.C. § 1291. We also conclude that we have jurisdiction over Sulima's appeal with regard to his claims against Tobyhanna, although Tobyhanna argues that Sulima's failure to specifically refer to the Order of April 11, 2008 (finding for Tobyhanna on the "joint employer" issue) in Sulima's Notice of Appeal is fatal to his appeal of that Order.

We have jurisdiction over "final" decisions of the District Court. 28 U.S.C. § 1291. When an officer or agency of the United States is a party to a lawsuit, a Notice of Appeal must be filed "within 60 days after the order or judgment appealed from is entered." Fed. R. App. P. 4(a)(1)(B). For an action involving claims against multiple parties, a judgment that resolves less than all of the claims against all of the parties is not a "final" judgment unless the court "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This includes a situation in which a court grants summary judgment as to one of several defendants. *See, e.g.*, *Buzzard v. Roadrunner Trucking*, 966 F.2d 777, 779 (3d Cir. 1992). The District Court here did not make such a certification, and therefore the District Court's judgment did not become "final" until its order of October 30, 2008.[1] Sulima filed his Notice of Appeal on November 29,

---

[1] The District Court first dismissed the claims against Tobyhanna in its order of April 11, 2008. Sulima moved to reinstate Tobyhanna; the District Court denied this motion in its order of October 30, 2008, which also granted summary judgment in favor of DS2.

8

2008, within the sixty-day limitation.

Sulima's failure to fully specify his intent to appeal the District Court's Order of April 2008 in the Notice of Appeal does not preclude our exercise of jurisdiction. A Notice of Appeal must specify the "judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Here, Sulima's original Notice of Appeal stated that he was appealing from the "October 30, 2008[,] Order and Decision issued by Judge Conaboy denying Sulima's right to a jury trial on claims under the Americans with Disabilities Act." App. 3. This Notice listed both DS2 and Tobyhanna as parties to the appeal. Later, on August 18, 2009, Sulima filed an Amended Notice of Appeal, which stated that he was appealing from the "Orders and Decisions of April 11, 2008, [and] October 30, 2008[,] issued by Judge Conaboy denying Sulima's right to a jury trial on claims under the Americans with Disabilities Act along with the Judgment entered on October 30, 2008." App. 1.

If an appeal is taken only from a specified judgment, the court does not acquire jurisdiction to review other judgments not specified or "fairly inferred" by the Notice. *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1254 (3d Cir. 1977). However, "[o]ur jurisprudence liberally construes notices of appeal." *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 858 (3d Cir. 1990). In this vein, we have held that we can exercise jurisdiction over orders not specified in the Notice of Appeal if: "(1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Polonski v.*

9

*Trump Taj Mahal Assocs.*, 137 F.3d 139, 144 (3d Cir. 1998) (*citing Williams v. Guzzardi*, 875 F.2d 46, 49 (3d Cir. 1989)). These conditions are satisfied here.

While Sulima's original notice of appeal only directly referenced the October 30 Order, it also named Tobyhanna as a party to the appeal. As noted above, the April 11 Order did not resolve all of the claims against all of the parties, and therefore did not become final until the issuance of the October 30 Order. As we have previously held, because "only a final judgment or order is appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings." *Elfman Motors*, 567 F.2d at 1253. Therefore, because the April 11 Order did not become final until the issuance of the October 30 Order, and because the October 30 Order denied Sulima's motion to reinstate Tobyhanna as a defendant, the orders are sufficiently connected. *See Drinkwater*, 904 F.2d at 858 (finding a connection when, even though a previous order had dismissed one claim, the order specified in the Notice of Appeal discussed in detail the merits of the dismissed claim).

Sulima's Notice of Appeal also demonstrated his intent to appeal the April 11 Order. We have previously held that an appeal from the denial of a motion for reconsideration demonstrates an intent to appeal the underlying dismissal. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 225 n.6 (3d Cir. 2007) (*citing Matute v. Procoast Nav. Ltd.*, 928 F.2d 627, 629-30 (3d Cir. 1991)). In the same way, Sulima's specification of the October 30 Order in his Notice of Appeal, in which the District Court denied Sulima's motion to reinstate Tobyhanna as a defendant, demonstrates an intent to appeal the

10

underlying dismissal of Sulima's claims against Tobyhanna.

Finally, Tobyhanna has not alleged any form of prejudice, and has fully briefed the disputed issues, so the third prong of the test is satisfied. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1093 (3d Cir. 1995). We therefore have jurisdiction to review the District Court's grant of summary judgment in favor of DS2 and its dismissal of the claims against Tobyhanna.

When reviewing a district court's summary judgment decision in an ADA case, we exercise plenary review, applying the same standard as the district court. *Turner v. Hershey Chocolate U.S.A.*, 440 F.3d 604, 611 (3d Cir. 2006). Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review *de novo* a District Court's decision granting a motion to dismiss pursuant to Rule 12(b)(6). *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir.2007).

## III.  Disability Discrimination Under the ADA

Sulima first contends that his transfer and subsequent layoff constituted unlawful employment discrimination. The ADA prohibits covered employers from discriminating against

11

disabled individuals. 42 U.S.C. § 12112(a) (2006).[2] To establish a prima facie case of discrimination, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). An individual is disabled if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2) (2006).

Equal Employment Opportunity Commission ("EEOC") regulations define an impairment as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2006). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id*. § 1630.2(i). A major life activity is substantially limited if an individual is unable to perform it or is "[s]ignificantly restricted as to the condition,

---

[2] The ADA was amended in 2008; the amendments took effect on January 1, 2009. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-59. The parties here have not argued that these amendments have retroactive effect. The citations in this opinion are to the statute and regulations as they existed during the events in question.

manner or duration" under which it is performed, as compared to an average person in the general population. *Id.* § 1630.2(j)(1). In determining whether a substantial limitation exists, the regulations require the consideration of three factors:

1. the "nature and severity of the impairment";

2. the "duration or expected duration of the impairment";

3. the actual or expected "permanent or long term impact" resulting from the impairment.

*Id.* § 1630.2(j)(2). A nonpermanent or temporary condition cannot be a substantial impairment under the ADA. *Williams v. Phila. Hous. Auth.*, 380 F.3d 751, 765 (3d Cir. 2004).

For purposes of summary judgment, the District Court focused on Sulima's gastrointestinal difficulties as the nature of his alleged disability, finding that Sulima had not presented any evidence to show that either his obesity or sleep apnea directly substantially limited a major life activity. Next, the District Court noted that Sulima did not argue that the gastrointestinal problems were caused by anything other than the medications he was taking. Therefore, the District Court found that Sulima was claiming to be substantially impaired solely due to side effects from his prescribed medications. We agree with the District Court's conclusion.

Because Sulima is claiming an impairment based on the side effects from medication, the factual situation presented here

13

is somewhat different from a typical ADA claim. Sulima has health problems that prompt the use of medication, but claims that his impairment under the ADA is based solely on a disorder or condition resulting from the medication, not from the underlying health problem that the medication is meant to treat.[3]

---

[3] This is unlike the scenario the Supreme Court considered in *Sutton v. United States*, where it held that the effects of medication and other mitigating measures used by the plaintiff must be taken into account when deciding whether an underlying impairment, towards which the mitigating measures are directed, actually substantially limits a major life activity. 527 U.S. 471, 482 (1999).

One of the express purposes of the ADA Amendments Act of 2008 was to overturn the Supreme Court's decision in *Sutton*. § 2(b)(3), 122 Stat. at 3554. The statute now contains a provision declaring that whether an impairment is substantially limiting must be judged "without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E) (2010). This statutory provision does not affect the claim here, where the plaintiff is claiming a disability only as a result of the side effects of medical treatment for a health problem which is not itself claimed to be disabling.

One reason the Supreme Court gave for requiring consideration of mitigating measures was the potentially severe side effects resulting from the treatment of an underlying condition. *Sutton*, 527 U.S. at 484. These concerns were not addressed by Congress in the ADA Amendments Act of 2008. *See* § 2(b)(3), 122 Stat. at 3553. The resulting statutory section only prohibits the consideration of *ameliorative* mitigatory

A few of our sister Courts of Appeals have considered this issue. In *Christian*, the principal case relied upon by the District Court, the plaintiff claimed that she was fired because of her anticipated medical treatment for hypercholesterolemia (i.e. high blood cholesterol). 117 F.3d at 1051-52. The Seventh Circuit Court of Appeals, although ultimately not ruling in favor of the plaintiff, concluded that "the treatment of a condition that is not itself disabling" may be a disability within the meaning of the ADA. *Id*. at 1052. In a similar case from the Eighth Circuit Court of Appeals, a plaintiff claimed a disability under the ADA based both on her hypertension and on side effects resulting from the interaction between prescribed hypertension and pain medications. *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999). Although also not ruling in favor of the plaintiff, the Eighth Circuit treated these two conditions separately, acknowledging that each could constitute an impairment under the ADA. *See id*. (referring to the side effects from the medications as an "alleged physical impairment"). Likewise, although finding that the plaintiff was not disabled within the meaning of the ADA, the Eleventh Circuit Court of Appeals did not reject the notion that the plaintiff could claim an impairment resulting from the side effects of chemotherapy treatments in response to cancer which was not itself disabling. *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 912 (11th Cir. 1996).

To evaluate Sulima's impairment for purposes of

---

measures, and does not address potentially negative side effects of medical treatment. *See* 42 U.S.C. § 12102(4)(E) (2010).

assessing whether he was disabled within the meaning of the ADA, the District Court adopted the reasoning of the Seventh Circuit in *Christian* in recognizing as disabling the effects of a treatment for a condition that is not itself disabling, as long as the plaintiff can show that (1) the treatment is required "in the prudent judgment of the medical profession," (2) the treatment is not just an "attractive option," and (3) that the treatment is not required solely in anticipation of an impairment resulting from the plaintiff's voluntary choices. *Christian*, 117 F.3d at 1052. Applying the *Christian* standard, the District Court held that Sulima was not disabled within the meaning of the ADA. The District Court first assumed for the sake of argument that Sulima had adequately shown that the medication's side effects, i.e. Sulima's gastrointestinal difficulties, actually constituted a substantial limitation on a major life activity. Even with this assumption, the District Court still found that Sulima was not disabled, because the medications were not "medically necessary." App. 23. In reaching this conclusion, the District Court pointed out that Dr. Fasciana discontinued Sulima's medication in December after he was made aware of the problematic side effects. In the absence of any evidence to the contrary, the District Court found that the medication was thus not required "in the prudent judgment of the medical profession," as required by the *Christian* test. *Christian*, 117 F.3d at 1052. The District Court further held that the two-month period between the side effects beginning and Dr. Fasciana discontinuing the medications — assuming they could be deemed medically necessary during that time — was not a long enough duration to qualify for "disability" under the ADA.

We agree with the Seventh Circuit that side effects from

16

medical treatment may themselves constitute an impairment under the ADA. However, as the Seventh Circuit noted, this category of disability claims is subject to limitation. For a treatment's side effects to constitute an impairment under the ADA, it is not enough to show just that the potentially disabling medication or course of treatment was prescribed or recommended by a licensed medical professional. Instead, following the *Christian* test, the medication or course of treatment must be required in the "prudent judgment of the medical profession," and there must not be an available alternative that is equally efficacious that lacks similarly disabling side effects. *Christian*, 117 F.3d at 1052. The concept of "disability" connotes an involuntary condition, and if one can alter or remove the "impairment" through an equally efficacious course of treatment, it should not be considered "disabling."

We agree with the District Court's holding that Sulima's gastrointestinal problems did not meet this standard, because he did not demonstrate that his prescribed medication was required in the prudent judgment of the medical profession. After being confronted by his employer regarding his frequent long breaks, Sulima contacted his doctor, Dr. Fasciana, who recommended that Sulima stop taking the medication that was causing the side effects. In his deposition, Dr. Fasciana testified that if a patient reported problems with the medications that Sulima was taking, "[w]e would have stopped" prescribing those medications. App. 964. There is nothing in the record to contradict this assessment. Additionally, there is no evidence in the record to show that the specific medications causing the side effects were, in the judgment of the medical profession, the only efficacious medications for Sulima. There is also no evidence in the record

17

to demonstrate that all other equally efficacious courses of treatment would have caused similarly disabling side effects. *See Christian*, 117 F.3d at 1052 (stating that "the disabling treatment [must] be truly necessary, and not merely an attractive option"); *see also Hill*, 181 F.3d at 894 (finding no evidence in the record that the plaintiff's "physical condition *compelled* her to take a combination of medications [that caused the side effects]" (emphasis in original)). Therefore, because Sulima did not demonstrate that the medications that were causing his problems were medically necessary, their side effects cannot be considered as impairments within the meaning of the ADA.

## IV. Whether Sulima Was "Regarded As" Disabled

Sulima next argues that, even if he is found not to have a disability within the meaning of the ADA, the statute also protects from discrimination individuals who are "regarded as having such an impairment" by their employer. 42 U.S.C. § 12102(2)(C) (2006). To prevail on a claim of this kind, a plaintiff must show that the employer either "mistakenly believed that [the employee has] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities." *Wilson v. MVM, Inc.*, 475 F.3d 166, 179 (3d Cir. 2007) (*quoting Sutton*, 527 U.S. at 489); *see also* 29 C.F.R. § 1630.2(l)(1),(3) (2006) (defining "regarded as having such an impairment").

We agree with the District Court that Sulima's employers did not regard him as disabled within the meaning of the ADA. In particular, Sulima did not allege any facts to support a

18

conclusion that his employers thought that Sulima's gastrointestinal problems were going to last for an extended period of time, as required under the ADA. *See Williams*, 380 F.3d at 765. Sulima clearly specified to his employers that his problems were a result of a side effect from medication he was taking, and indicated that he could get his medication changed. Unlike medications for a permanent heart condition, the medication here was designed to enable him to lose weight, which, if successful, would alleviate the need for the medication. In addition, the December 9 note from Dr. Fasciana, given to his employers, indicated that Sulima's medication had in fact been changed and that he would no longer need frequent long breaks. This does not support the proposition that his employers regarded Sulima as suffering from a non-temporary impairment, and there are no facts in the record that would create an issue in this regard.

## V. Whether Sulima Had a Good Faith Belief that He Was Disabled

Sulima's complaint also included a retaliation claim under the ADA. Even if Sulima were found not to be disabled or regarded as disabled under the ADA, he argues that, in the alternative, he was transferred and subsequently laid off in retaliation for having requested an accommodation from his employer. For purposes of this claim, Sulima alleges that the October 9 note from Dr. Fasciana, which asserted that Sulima would have to use the restroom more than usual, constitutes a request for an accommodation, and that his transfer and layoff were in retaliation for this request.

19

Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation. *E.g.*, *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir. 2003). In *Williams*, we noted that unlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a "reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested." 380 F.3d at 759 n.2.

The District Court found that when Sulima requested the accommodation he did not have a good faith belief that he was disabled within the meaning of the ADA. We agree that Sulima lacked a good faith belief that he was disabled. There is no evidence indicating that Sulima believed his condition to be anything but temporary. As the District Court noted, Sulima knew that his gastrointestinal problems were caused by his weight-loss medication, that his medication had been changed in the past, and that the medication could be changed again if necessary. This is apparent from the fact that when Sulima was confronted by his employer, he went directly to Dr. Fasciana to seek a medication change in order to eliminate the side effects. Based on these facts, we agree with the District Court's conclusion that Sulima could not have had a good faith belief that these side effects were anything but temporary, and therefore he could not have had a good faith belief that he was disabled within the meaning of the ADA.

## VI.  Claims Against Tobyhanna

20

We agree with the District Court that there is no material difference between Sulima's claims against DS2 and those against Tobyhanna. Because we find that the District Court correctly held that Sulima's claims were without merit, there is no reason to reach the question of whether Tobyhanna was Sulima's joint employer.

## VII. Conclusion

For the reasons set forth above, we will AFFIRM the Orders of the District Court.