**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-1472

———————

SANDRA RUMANEK,
                    Appellant

v.

INDEPENDENT SCHOOL MANAGEMENT, INC.

————————————————————

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-12-cv-00759)
Magistrate Judge Sherry R. Fallon

————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 10, 2015
Before:  FISHER, KRAUSE and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  July 21, 2015)

———————

OPINION[*]

———————

PER CURIAM

    In this employment discrimination action, Sandra Rumanek appeals from the

Magistrate Judge's partial grant of summary judgment in favor of Independent School

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Management, Inc. ("ISM"). She also challenges the admission of certain evidence and jury instructions.[1] Rumanek alleged that ISM violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., by retaliating against her for being a witness in another employee's Equal Employment Opportunity Commission ("EEOC") proceedings, threatening to file her own EEOC complaint, and requesting an accommodation for short-term memory issues.[2] For the following reasons, we will affirm.

## I. BACKGROUND

Because we write primarily for the parties, we recite only those facts necessary for our discussion of the arguments raised in this appeal. Rumanek began working for ISM in 2002, and, by 2007, she reported directly to ISM's president, Roxanne Higgins. Early in 2009, Higgins and Rumanek discussed a new position for Rumanek. In May 2009,

---

[1] On June 26, 2014, Rumanek filed an amended notice of appeal from the March 5, 2014 denial of her revised motion for a new trial. The notice of appeal was not filed within thirty days of the entry of that order, see Fed. R. App. P. 4(a)(1)(A), so we lack jurisdiction to review it. Bowles v. Russell, 551 U.S. 205, 214 (2007). Rumanek also filed amended notices appeal from orders (1) denying her motion for reargument, (2) partially granting ISM's motion for reargument, and (3) denying her motion for judgment as a matter of law or for a new trial. She has made no argument regarding those orders in her opening brief, so we deem her to have waived any issues on appeal. United States v. Hoffecker, 530 F.3d 137, 162 (3d Cir. 2008).

[2] Rumanek also relied on similar state law provisions and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Although she initially made other allegations, only the retaliation claims remained at summary judgment. Rumanek has not raised any issue concerning her FMLA retaliation claim.

Higgins learned that Rumanek had been a witness in another employee's EEOC proceedings against ISM. That employee, August Stoner, alleged that she had been harassed due to her race. Higgins later testified that Rumanek's participation in the Stoner proceedings was disappointing, especially after Higgins excused a costly mistake Rumanek made in a contract matter in April 2009. Nonetheless, Higgins and Rumanek continued to discuss her transition into a Field Advisor position. Higgins ultimately agreed that Rumanek could begin the position in the fall of 2009 on a date of her choice if she could limit her expenses for a few months. Higgins also indicated that Rumanek's compensation would be reassessed in January 2010. Thereafter, Higgins approved a compensation proposal made by Rumanek that permitted her to retain her base salary for a twelve-month period, in addition to earning commissions.

In November 2009, Rumanek was involved in two car accidents that left her with weakness in her upper body, fatigue, and headaches. She asked to work from home and use a telephone headset, which ISM permitted. In the spring of 2010, Rumanek reported a shortfall in her pay, which Higgins explained was due to a reduction in her base salary after she began earning commissions. Rumanek's full base salary was reinstated when Higgins realized that it was provided for in the prior agreement. Rumanek subsequently identified other errors in her pay, which ISM corrected.

On August 23, 2010, Higgins and Rumanek were to meet regarding compensation. On August 20, Rumanek emailed Higgins seeking to tape record the meeting because she had short-term memory issues as a result of the car accidents. App., Tab L at D800. In

3

the same email, Rumanek accused Higgins of taking advantage of her while she was "cognitively disabled" by making errors in her pay and retaliating against her for becoming involved in the Stoner matter. Id. Higgins proposed rescheduling the compensation meeting in September and having a separate meeting before then to discuss the retaliation allegations. Id. at D814. After some back and forth, Rumanek emailed Higgins on August 23, stating that a meeting was pointless and that she planned to file an EEOC complaint. Id. at D813-14.

On August 25, Rumanek filed an intake questionnaire with the EEOC. The same day, Higgins wrote Rumanek, stating that her communications had "taken on a hostile and threatening tone." Id. at D812. Higgins still sought to meet, explaining in part that: (1) she took Rumanek's allegations seriously and encouraged her to disclose all issues so they could be investigated and addressed; (2) the pay discrepancies were honest errors; and (3) the meeting could not be taped, but their notes would form the record, as was customary. Id. Rumanek agreed to meet on August 30 in the presence of an independent third party. A few days before the meeting, however, Rumanek requested FMLA leave, which was approved. Higgins wrote Rumanek, noting that ISM planned to retain an outside investigator to follow-up on her allegations and giving her the option of starting the investigation during her leave. Supplemental Appendix ("S.A.") at 143-44. Higgins also noted that ISM would accommodate Rumanek's memory issues insofar as they involved job performance (i.e., client meetings). Id. Rumanek asked to be left alone while on leave. Id. at 145.

4

Rumanek was subsequently granted an extension of FMLA leave.  She returned to work on November 18, and the postponed meeting was rescheduled for November 24.  App., Tab N at D1275.  At the meeting, Higgins again stated that it would not be tape-recorded, but that another ISM employee would attend as record keeper.  Id.  Rumanek said that this was unacceptable and refused to participate.  Id.  Higgins cautioned her that failure to participate would be considered insubordination.  Nonetheless, Rumanek refused, and Higgins fired her that day.  Id., S.A. at 159.

After Rumanek filed suit, the parties consented to proceed before a United States Magistrate Judge.  ISM moved for summary judgment, which was granted on all claims except a Title VII retaliation claim based on Rumanek's email threatening to file an EEOC complaint.[3]  Trial was held on that claim, and the jury returned a verdict in favor ISM.  Rumanek filed a motion for a new trial, which was denied.  This appeal followed.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the order for summary judgment.  Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015).  To be entitled to summary judgment, "the movant must show that, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a

---

[3] The EEOC complaint was initially identified as the basis for the surviving claim. After reargument, the Magistrate Judge clarified that the threat to file the complaint was the protected activity alleged by Rumanek.

matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). We generally review a jury instruction for an abuse of discretion, but we exercise plenary review over whether the instructions stated the proper legal standard. United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995). In the absence of a proper objection at trial, we may review instructions for plain error. Collins v. Alco Parking Corp., 448 F.3d 652, 655 (3d Cir. 2006). We review evidentiary rulings for an abuse of discretion. McKenna v. City of Phila., 582 F. 3d 447, 460 (3d Cir. 2009).

### III.  DISCUSSION

#### A.  ADA Retaliation Claim

The ADA prohibits covered employers from discriminating against disabled individuals, which includes retaliating against an employee for requesting an accommodation. See Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185, 188 (3d Cir. 2010). A retaliation claim does not require the demonstration of a disability under the ADA, but rather "a reasonable, good faith belief that [the plaintiff] was entitled to request the reasonable accommodation she requested." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 759 n.2 (3d Cir. 2004). The Magistrate Judge found that Rumanek did not have a good faith belief she was disabled when she asked to record the personnel meeting. The judge based her determination on the following facts: (1) Rumanek experienced symptoms from the November 2009 accidents immediately thereafter, but did not claim to need a recording device to assist with her memory until August 2010; (2) the only thing she ever requested to record was the personnel meeting,

6

and she ignored ISM's offer to permit her to record client conversations; (3) she admitted that her request was made in part to bolster her EEOC claim; (4) less than a month before she made the request, she received a medical evaluation indicating that her memory was average to above average; and (5) shortly after making her request, she told the EEOC that she no longer had a disability.

Rumanek challenges these findings. First, she contends that the Magistrate Judge erroneously relied on the evaluation of her I.Q. to conclude that she had no memory problems. That is incorrect. The judge cited to the "Memory" portion of the medical evaluation, which indicated that Rumanek's abilities ranged from "average" to "high average" to "superior." App., Tab D at EEOC_FOIA147-48. She also argues that the judge mischaracterized a letter to the EEOC as an admission that she made her accommodation request in part to bolster her EEOC claim. However, the letter at issue states: "I needed to tape record the meeting . . . *both because of my EEOC complaint against the company* . . . and because of my cognitive impairment." Id., Tab N at EEOC_FOIA110 (emphasis added). This clearly supports the finding that Rumanek admitted that her request was made, in part, to support her EEOC claim.

Although not disputing the fact that her sole request to record was made in regard to the personnel meeting, Rumanek explains that she ignored ISM's offer to allow her to record client conversations because it "wasn't necessary." Appellant's Br. at 26. This quote is from her deposition testimony, where she also testified that she did not need to record client conversations because the clients "were not harassing and retaliating against

me" and asked "standard" questions. App., Tab R, Doc. 109 at 283-284. She further testified that she needed to record any meeting with Higgins involving her compensation or retaliation complaints. Id. at 286-87. This testimony provides more evidence of Rumanek linking her request to her EEOC claims, instead of her alleged short-term memory issues.[4]

Lastly, Rumanek challenges the Magistrate's Judge's statement that she told the EEOC "that she did not have a disability at that time but had previously had one." The judge relied on an EEOC intake questionnaire on which Rumanek checked the following two boxes: "Yes, I have a (improving) disability" and "I do not have a disability now but I did have one." This is equivocal at best, and is not fairly construed as an admission by Rumanek that she had no disability at the time she filled out the questionnaire. However, it is also not susceptible to the construction she now proposes: as asserting cognitive disabilities. Furthermore, her reliance on a later submission to the EEOC in which she claimed to have poor short-term memory is insufficient to overcome the other bases of the Magistrate Judge's determination, in particular the fact that her medical evaluation showed average to superior memory abilities. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (noting that the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" to defeat summary judgment).

---

[4] Rumanek was putting together her EEOC complaint before she made her request to tape the personnel meeting. App., Tab D at EEOC_FOIA159.

In sum, we agree with the Magistrate Judge's decision to grant summary judgment in favor of ISM on the ground that Rumanek did not demonstrate a good faith belief that she needed to record the personnel meeting due to short-term memory issues. Because the grant of summary judgment was appropriate, it is not necessary to address Rumanek's arguments regarding the failure to submit evidence regarding her ADA claim to the jury.

B. Title VII Retaliation Claim

To establish a prima facie claim for retaliation under Title VII, Rumanek had to show that: (1) she engaged in a protected activity; (2) ISM took adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). Rumanek alleged that ISM fired her in retaliation for participating in Stoner's EEOC complaint. The Magistrate Judge granted summary judgment in favor ISM on this claim because Rumanek failed to establish a causal link between her participation in the Stoner matter and her termination. The judge noted that well over a year elapsed between Rumanek notifying Higgins that she served as a witness for Stoner and Rumanek's termination. In the interim, Higgins allowed Rumanek to begin the Field Advisor position and approved her compensation proposal. In light of these facts, and the record as a whole, the judge found Higgins' testimony that it was "a little disappointing" that Rumanek served as a witness for Stoner insufficient evidence of a retaliatory motive supporting causation.

9

We agree. There was no temporal connection between Rumanek serving as a witness and being fired, and she presented no evidence suggesting retaliatory animus or antagonism. See Daniels, 776 F.3d at 196 (noting that causation may be established by suggestive timing or other circumstantial evidences that supports the inference of retaliation). On the contrary, Higgins gave Rumanek the new position and compensation she sought *after* becoming aware of her participation in the Stoner complaint. Even drawing all inferences in Rumanek's favor, we agree that no reasonable trier of fact would find that Higgins fired Rumanek in retaliation for serving as a witness for Stoner. Furthermore, Rumanek has made no argument on appeal regarding causation. Instead, she has merely presented a laundry list of evidence that she says establishes a timeline of her "protected activity" and ISM's adverse actions. In addition to not being relevant to the dispositive issue of causation, some of the evidence cited is not even related to the retaliation claim at issue. Accordingly, Rumanek has presented no basis to disturb the grant of summary judgment.

C. Jury Instructions

Rumanek argues that several jury instructions were erroneous.[5] First, she challenges the instruction on the first element of a Title VII retaliation claim, which

_____

[5] ISM contends that we lack jurisdiction to review these issues, as well as those in the next section of this opinion, because Rumanek did not identify them in her notices of appeal. However, Rumanek appealed from the final judgment, which "draws in question all prior non-final orders and rulings," Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1253 (3d Cir. 1977), so we find it appropriate to exercise jurisdiction, particularly given that ISM has not alleged any prejudice and has briefed the issues. See Sulima, 602

stated that Rumanek had to prove that she engaged in protected conduct when she told

Higgins that she intended to file an EEOC complaint. She claims that "ISM does not

dispute this element" should have been added to the instruction because Higgins testified

that, in her opinion, Rumanek's EEOC complaint was filed in good faith, thereby leaving

no question for the jury to decide on this element. Rumanek did not request this

instruction at trial, so we review for plain error. Under that standard, reversal is required

only where the error "was fundamental and highly prejudicial, such that the instructions

failed to provide the jury with adequate guidance and our refusal to consider the issue

would result in a miscarriage of justice." Collins, 448 F.3d at 656. We perceive no plain

error here because there was no basis to include the additional language. Higgins'

opinion that Rumanek acted in good faith is merely evidence regarding protected activity,

not an explicit concession from ISM that it did not dispute the element. Moreover, just

prior to Higgins' testimony, counsel noted that it was ISM's position that Rumanek did

not act in good faith. App., Tab O at 210-11.

Turning to the next challenge, Rumanek faults the judge for: (1) refusing to

include other protected activities in the instructions; and (2) failing to "put the Title VII

retaliation Statute in the jury instruction, what the law protects and what the law prohibits

[sic]." Appellant's Br. at 17. As noted in the denial of Rumanek's motion for a new trial,

the protected activity that survived summary judgment was part of the Title VII

instruction. Rumanek cites no authority for the proposition that claims that did not

F.3d at 184.                                         11

survive should have been submitted to the jury. The instructions also adequately covered the law pertaining to a retaliation claim. Rumanek fails to explain how the instructions departed from applicable law; thus, we perceive no plain error.[6]

She also argues that: (1) a phrase regarding ISM's burden of proof for affirmative defenses should have been stricken; and (2) a limiting instruction regarding after-acquired evidence should have been given. To put this in context, there was after-acquired evidence that Rumanek worked part-time, but accepted full-time pay. Higgins testified that she would have fired Rumanek if she had known. The judge ruled that she, not the jury, would decide the issue because it related to wage calculations for damages. However, a phrase about ISM's burden of proof for affirmative defenses remained in the instructions. When Rumanek's counsel stated in closing that ISM had to prove its affirmative defenses, ISM asked for a curative instruction to clarify that it had no burden of proof because no defenses were before the jury. Rumanek's counsel opposed a curative instruction, and the judge did not issue one.

Taking a position contrary to the one espoused at trial, Rumanek now argues that the instruction harmed her because it must have led the jury to consider the after-acquired evidence. She presents no support for this speculation, nor does it seem any can be found. The instruction stated only that the jury could not find for Rumanek if ISM met

_____

[6] Rumanek notes that her proposed instruction regarding protected activity was not adopted, but merely proposing an instruction is not sufficient to preserve an objection. See Franklin Prescriptions, Inc. v. N.Y. Times Co., 424 F.3d 336, 339 (3d Cir. 2005).

its burden of proof on any affirmative defenses. The jury was not instructed on after-acquired evidence, or any other defense. There is thus no connection between the challenged instruction and the after-acquired evidence, and no plain error. Rumanek's contention that the jury should not have heard "the after-acquired testimony without instructing them it was not to enter their deliberations with regard to ISM's liability for its conduct," Appellant's Br. at 20, is equally ill-founded. Counsel did not request an instruction, and there is no basis for the one now proposed. The case was not submitted to the jury on "ISM's liability for its conduct," but on whether Rumanek proved her retaliation claim, about which the jury was properly instructed.[7]

Finally, Rumanek challenges the "business judgment" language italicized below:

> ISM has given insubordination as a nonretaliatory reason for its termination of Ms. Rumanek's employment. If you disbelieve ISM's explanations for its conduct, then you may, but need not, find that Ms. Rumanek has proved retaliation. *In determining whether ISM's stated reason for its actions was a pretext, or excuse, for retaliation, you may not question ISM's business judgment. You cannot find retaliation simply because you disagree with the business judgment of ISM or believe it is harsh or unreasonable. You are not to consider ISM's wisdom.* However, you may consider whether ISM's reason is merely a cover-up for retaliation.

Final Jury Instructions, Rumanek v. Indep. Sch. Mgmt., Inc., No. 12-cv-759 (D. Del. Jan. 16, 2014), ECF. No. 143 at 14. Rumanek objected at trial and raised the issue in her motion for a new trial. On appeal, she argues that the jury is supposed to question the

---

[7] In addition, Higgins testified that she did not terminate Rumanek for the hours/pay matter, S.A. at 110, so it is hard to see how the after-acquired evidence could have entered into the deliberations on causation for termination.

13

business judgment of the defendant and that the instruction is at odds with Supreme Court precedent. As the Magistrate Judge noted, however, the language is taken from this Circuit's model instructions and is designed to distinguish the concept of pretext from business judgment. As we have explained:

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). This passage makes clear that questionable business decision-making does not equate to pretext. Rumanek's position is therefore directly at odds with the law. Furthermore, the Supreme Court case she relies upon, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006), is inapposite because it involved the standard for showing pretext from superior qualifications evidence, which is not at issue here. The instruction given in this case did not misstate the applicable law, and including the business judgment language was not an abuse of discretion.

D. Remaining Issues

Rumanek complains that opposing counsel: (1) twice referred to a name in her personal injury lawsuit; (2) questioned a medical expert about the cause of her emotional distress; and (3) reminded the jury of her personal injury lawsuit by noting that the expert had reviewed her medical records for that case. To the extent she challenges the admission of evidence, we note that she did not object to the first and third issues at trial. The failure to raise an issue in the District Court usually results in waiver on appeal. See

14

<u>Webb v. City of Phila.</u>, 562 F.3d 256, 263 (3d Cir. 2009).  Although we have the discretion to review waived issues, we have limited this to cases presenting exceptional circumstances.  <u>Id.</u>  Exceptional circumstances are not presented by these claims, and we decline to reach their merits.  As for the second issue, the judge permitted a limited scope of questioning, over counsel's objection, because Rumanek's tearfulness on the stand and testimony that her termination caused substantial emotional distress opened the door to testimony about its cause.  Rumanek does not address that ruling, nor does she persuasively argue that the judge abused her discretion.

In the "Relief Requested" section of her brief, Rumanek states that counsel's failure to make a timely Rule 50 motion was plain error.  We will not review this conclusory assertion.  As we have previously stated, "appellate courts generally should not address legal issues that the parties have not developed through proper briefing."  <u>Sw. Pa. Growth Alliance v. Browner</u>, 121 F.3d 106, 122 (3d Cir. 1997).

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment.

15