NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1402
_____

JON TIRK,

Appellant

v.

DUBROOK, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-14-cv-00889
Chief District Judge: The Honorable Joy Flowers Conti

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 9, 2016

Before: SMITH, Chief Judge, MCKEE, and RESTREPO, Circuit Judges

(Filed:  December 27, 2016)
_____

OPINION[*]
_____

SMITH, Chief Judge

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jon Tirk appeals from the District Court's order granting summary judgment in favor of Dubrook, Inc., ("Dubrook") on his discrimination claim under the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*, and his retaliatory discharge claim under Pennsylvania law. For the following reasons, we will affirm.

I.

Jon Tirk was a maintenance worker with Dubrook from 2003 to 2013. While with Dubrook, Tirk injured his left knee several times. In January 2010, he slipped on ice near his home and tore his meniscus. Tirk had surgery to repair his knee in May 2010 and returned to work in July 2010. In December 2010, Tirk dislocated his left kneecap after slipping at work. Following the December 2010 incident, Tirk missed six weeks of work. He also filed a workers' compensation claim after the December 2010 incident and received workers' compensation benefits. Dubrook did not contest Tirk's claim for benefits. Tirk missed four weeks of work in February 2012, following another surgery to repair his left knee. Upon his return to work following that second surgery, Tirk spent several months with medical restrictions on his ability to kneel, squat, and climb. Dubrook fully observed those restrictions.

On July 29, 2013, Tirk fell from a ladder while at work and reinjured his left knee. He filed an accident report the following day.[2] Tirk did not miss any work time because of this injury but faced temporary medical restrictions on his ability to kneel, squat, and climb. On August 22, 2013, Tirk's doctor modified those restrictions to allow for "light work." Dubrook again honored those restrictions.

On August 30, 2013—slightly over a month after Tirk fell from the ladder—Dubrook terminated Tirk, as well as two other employees: Barry Hinderliter and Larry Scott. Dubrook made those termination decisions on August 27. According to Dubrook, it terminated Tirk for economic reasons as part of a reduction in force. At the time of Tirk's termination, Dubrook had experienced a net financial loss of over $100,000 in 2013 and, in the summer of 2013, had eliminated overtime work for the entire company. Following the August 30, 2013 terminations, Dubrook did not replace Tirk, and existing Dubrook employees performed Tirk's responsibilities.

---

[2] Over a year later, on December 4, 2014, Tirk submitted a formal claim for workers' compensation benefits related to this incident.

II.

We have jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final judgment in favor of Dubrook.[3]  We review the District Court's grant of summary judgment de novo.  *See DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007) (citing *CAT Internet Servs. Inc. v. Providence Wash. Ins. Co.*, 333 F.3d 138, 141 (3d Cir. 2003)).  We apply the same standard as the District Court in determining whether summary judgment is appropriate.  *See Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 130 (3d Cir. 2002).  Therefore, summary judgment is proper if, viewing the record in the light most favorable to Tirk and drawing all inferences in Tirk's favor, there is no genuine issue of material fact, and Dubrook is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Abramson v. William Paterson Coll.*, 260 F.3d 265, 276 (3d Cir. 2001).

A.

Tirk first contends that the District Court improperly granted summary judgment for Dubrook on his ADA claim, which alleged that Dubrook discriminated against him because of a perceived disability.  This argument fails.

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

In making his contention, Tirk proceeds under a pretext theory through the *McDonnell Douglas* burden-shifting analysis.[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 & n.3 (3d Cir. 2004) (applying the *McDonnell Douglas* framework to an ADA discrimination claim). Under this framework, Tirk must first establish a prima facie case of discrimination by a preponderance of evidence. *See Williams*, 380 F.3d at 759 n.3; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Should he do so, the burden of production then shifts to Dubrook "to articulate some legitimate, nondiscriminatory reason" for Tirk's termination. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If Dubrook carries that burden, the burden of production shifts back to Tirk to prove, by a preponderance of evidence, that Dubrook's articulated reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (citing *Burdine*, 450 U.S. at 252–53).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . ." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under the ADA, Tirk must show "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with

---

[4] Because Tirk's brief asserts arguments solely under a pretext theory, we will not address any issues relating to a mixed motive theory.

or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). The third element requires a plaintiff to show causation. *See, e.g.*, *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) ("[T]o make out a claim under the ADA, the plaintiff need only show that intentional discrimination was the but for cause of the allegedly discriminatory action.").

We agree with the District Court that Tirk fails to make a prima face showing of causation. Tirk contends that Dubrook perceived him as disabled and that Dubrook's perception caused his termination.[5] Tirk argues that the temporal proximity of approximately one month between the filing of his accident report and his termination sufficiently demonstrates a causal connection. It does not. For one, while this Court has held that "unduly suggestive" temporal proximity may give rise to an inference of causation, we have never held that a temporal gap of one month alone sufficiently demonstrates a causal connection. *See Farrell v.*

---

[5] Under 42 U.S.C. § 12102(3), Tirk meets the ADA's requirement of being "regarded as" disabled if he demonstrates that he "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Dubrook challenges whether Tirk was disabled "within the meaning of the ADA" as required to establish a prima facie case. *Sulima*, 602 F.3d at 185. We need not address that issue because Tirk fails to establish the causation element of the prima facie case and to show pretext.

*Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). *Compare Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (concluding that a temporal gap of seven days between a termination and employee's invocation of FMLA rights was sufficient to establish prima facie causation for a retaliation claim), *with Williams*, 380 F.3d at 760 (holding that a two-month gap between an employee's protected activity and the employee's termination alone did not establish sufficient prima facie causation). In fact, this Court's decision in *Thomas v. Town of Hammonton*, 351 F.3d 108 (3d Cir. 2003), confirms that a one-month gap can be too long, standing alone, to establish a prima facie showing of causation. *Id.* at 114 (concluding that a three-week gap between the filing of a complaint and employee's termination was insufficient, on its own, to establish prima facie causation).

We need not rely solely on that ground to affirm the District Court though because Tirk fails to show that Dubrook perceived him as disabled with the filing of his accident report on July 30, 2013. Stated differently, the undisputed record provides no basis to believe that the temporal gap Tirk identifies is "unduly suggestive" of discrimination, given Tirk's history of knee injuries, time off from work related to those injuries, and medical work restrictions. Tirk injured his left knee twice before July 2013. Both prior injuries necessitated extended time away

7

from work, required surgeries, and resulted in a claim for workers' compensation benefits. Tirk, however, faced no repercussions from Dubrook because of those injuries or that claim. He provides no explanation for, and points to no evidence showing, why the most recent July 2013 injury, which required no time off from work and minimal temporary work restrictions, created a perception of disability resulting in his termination. In sum, Tirk offers no evidence to conclude that Dubrook perceived him as disabled only as of July 30, 2013, undermining Tirk's temporal proximity argument.

Even assuming *arguendo* that Tirk could demonstrate a prima facie case of disability discrimination, his ADA claim would still fail because he is unable to show that Dubrook's proffered reasons for his termination were pretextual. Dubrook's stated reasons for terminating Tirk were that the company was experiencing financial difficulty and other remaining employees could perform Tirk's job responsibilities. As the District Court correctly observed, Tirk does not dispute that Dubrook faced economic problems and sought to improve its financial position. Tirk also admits that (1) Dubrook's employees could absorb the responsibilities of his maintenance position, (2) this performance of his position by remaining employees actually occurred following his termination, and (3) as a result, Dubrook never replaced him. In short, Dubrook undisputedly terminated

8

Tirk because of its troublesome economic position and the superfluous nature of Tirk's job.

Tirk nevertheless contends that Dubrook's stated reasons for terminating him were pretextual because Dubrook partially replaced another employee terminated as part of the same reduction in force that caused Tirk's termination. Dubrook terminated two other employees when it terminated Tirk—Larry Scott and Barry Hinderliter. Dubrook terminated Scott through a voluntary retirement and did not replace Scott. Dubrook terminated Hinderliter for several reasons, including the company's economic downturn and Hinderliter's poor job performance. Three months after Hinderliter's termination, Dubrook hired an individual who partially performed Hinderliter's previous job responsibilities. Dubrook's partial replacement of Hinderliter's position provides no basis to disbelieve Dubrook's stated reasons for terminating Tirk, which Tirk again does not dispute.

## B.

Tirk also argues that the District Court incorrectly granted summary judgment in favor of Dubrook on his retaliatory discharge claim under Pennsylvania law. Under Pennsylvania law, an employer may not terminate an employee for filing a workers' compensation claim. *See Shick v. Shirey*, 716 A.2d

9

1231, 1237 (Pa. 1998). Tirk's arguments under Pennsylvania law, however, mirror those made regarding his ADA claim. Therefore, for reasons similar to those with his ADA claim, Tirk's arguments are unpersuasive.

In support of his retaliatory discharge claim, Tirk relies on the same arguments he uses to buttress his ADA claim. He also notes that he was one of only two Dubrook employees to file an accident report in 2013. Given that fact, Tirk argues that his subsequent firing in 2013 creates an inference that Dubrook actually fired him because of his report. This argument is unpersuasive in light of the undisputed record because no facts support this inference. Rather, the record demonstrates that Dubrook did not discriminate because of Tirk's accident report filing. For one, Dubrook did not fire the other employee with a pending work injury claim from 2013. Moreover, Dubrook never challenged Tirk's previous workers' compensation claim or his right to benefits. They made no statements suggesting that they disapproved of Tirk's filing his report or that Tirk could not perform his work following the filing of the report. Dubrook and its employees also never punished or otherwise retaliated against Tirk for taking time off from work for his multiple previous injuries to his left knee. Finally, while Tirk was one of two employees to file an accident report in 2013, Dubrook also had thirty-seven other workplace injury claims pending from its employees at the time it

terminated Tirk.  Given these undisputed facts, no reasonable jury could infer that Dubrook actually fired Tirk for any reason other than the company's economic circumstances and the fact that other employees could perform the responsibilities of Tirk's former position along with their own job responsibilities.

## III.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment for Dubrook.