NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3271
_____

EVERETT K. TERRY,

Appellant

v.

YEADON BOROUGH; MAYOR DOLORES JONES-BUTLER, IN HER
OFFICIAL AND INDIVIDUAL CAPACITY; COUNCIL PRESIDENT ASHER
KEMP, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY; COUNCILMAN
JACK BYRNE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY;
COUNCILWOMAN FLORENCE MCDONALD, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY; COUNCILMAN JOHN HOLDEN, IN HIS
OFFICIAL AND INDIVIDUAL CAPACITY; COUNCILWOMAN DEBORAH
ROBINSON-HOWELL, IN HER OFFICIAL AND INDIVIDUAL CAPACITY;
COUNCILWOMAN DENISE STINSON, IN HER OFFICIAL AND
INDIVIDUAL CAPACITY; COUNCILWOMAN NELVA WRIGHT, IN HER
OFFICIAL AND INDIVIDUAL CAPACITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06205)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2016

Before:  McKEE, *Chief Judge*, HARDIMAN, and RENDELL, *Circuit Judges*.

(Filed:  September 26, 2016)

—————————

OPINION[*]

—————————

HARDIMAN, *Circuit Judge*.

Everett Terry appeals the District Court's summary judgment in favor of the Borough of Yeadon *et al.* on his Fourteenth Amendment claims. We will affirm.

I

Terry was a part-time police officer for Yeadon from 2002 until 2005, when he was hired as a full-time officer. His record of service was by all accounts exemplary and he was held in high esteem by his fellow officers and Chief of Police, Donald Molineux. But two happy events—his promotion and his wedding—sowed the seeds of his termination.

Upon being promoted to full-time status, Terry met with Borough Finance Director Terri Vaughn to complete paperwork. In the course of completing the forms, Terry reported no spouse, which made sense since he was not legally married. But when Terry designated his companion Margaret Schmidt as the beneficiary of his life insurance policy, Vaughn inquired why he had not listed Margaret as his spouse on his health insurance forms. Terry explained that he was not legally married, though Margaret was

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

his wife "as far as [he was] concerned."[1] App. 988. In response, Vaughn told Terry that he could list Margaret as his spouse on his paperwork, and he did so.[2]

Five years later, on July 17, 2010, Terry and Margaret formally married. Terry uploaded photographs of the ceremony onto his Facebook page shortly thereafter. The Facebook photos revealed the couple's interracial status: Terry is African-American and Margaret is Caucasian. Terry alleges he was terminated based on his interracial marriage.

Defendants paint a different portrait of the investigation into Terry's marital status. Yeadon Mayor Delores Jones-Butler, an African-American, maintains that her suspicion was triggered because while Terry was usually a "very open" person, she had no idea that he was to be married until learning of the wedding through hushed office gossip. App. 674. This perceived concealment "bothered" Butler and sounded her internal alarm. App. 679–80.

Butler then asked Chief Molineux whether the ceremony was a marriage or merely a renewal of vows. Upon learning that it was the former, she asked for Terry's personnel file and discovered that he had listed Margaret as his spouse on his health benefits forms. Further investigation revealed that the Borough had expended approximately $55,000 on health insurance benefits for Margaret based on Terry's inaccurate designation. Butler

---

[1] The couple had been in a relationship since 1989 and had lived together since 2002. Margaret was legally married to another man during part of her relationship with Terry and finalized her divorce in 2007.

[2] Officer Ronald Kent, also newly hired, witnessed the entire exchange while he sat alongside Terry filling out his own paperwork. His testimony supports Terry's account.

met with Terry and asked him to resign and repay the money; Terry offered to repay the Borough but declined to step down. Butler reported Terry to the Borough Council and recommended that his employment be terminated.[3]

The Council held a hearing on the matter during an executive session on October 4, 2010, which Terry attended with legal and union representation. Terry explained how he came to list Margaret as his spouse well before they were legally married, hoping the Council would be sympathetic to the fact that he had been honest with the Borough's Finance Director and was simply following her instructions. Following the hearing, Terry received a letter from Butler informing him that he would be suspended from October 15 to October 21 (the date of the next regular meeting of the Council), whereupon the Council would vote whether to fire him

When October 21 arrived, Terry received a phone call from Chief Molineux informing him that he could return to work the next day. Terry claims the Council voted to retain his employment at the October 21 session, but the record reflects that the Council instead voted unanimously to "[t]able the issue until the next meeting."[4] App. 1206. At that meeting, which took place on November 4, the Council voted 4–1 to terminate Terry's employment.

---

[3] Mayor Butler was responsible for administering the Yeadon Police Department, but was not a member of the Borough Council, which is the final authority on the firing of employees, including police officers.

[4] Chief Molineux had been informed by the solicitor's office that Terry's suspension was lifted—not that the Council had voted to let Terry keep his job.

After exhausting the Borough's grievance and arbitration process and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Terry brought this action under 42 U.S.C. § 1983 against Yeadon Borough, Butler, and seven members of the Borough Council, alleging violations of his Fourteenth Amendment rights to equal protection and due process of law. The District Court entered summary judgment against Terry and this appeal followed.[5]

II

We review Terry's race discrimination claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973):

> First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (internal quotation marks and citation omitted). Because the Defendants proffered a legitimate reason for Terry's firing—his wrongful designation of Margaret as his spouse on his health insurance forms

---

[5] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Heightened Indep. & Progress, Inc. v. Port Auth. of N.Y. & N.J.*, 693 F.3d 345, 351 (3d Cir. 2012) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010)) ("Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

and the costs incurred by the Borough—we will skip to the final step. *See, e.g.*, *Jones*, 198 F.3d at 410 ("Our experience is that most cases turn on the third stage, *i.e.*, can the plaintiff establish pretext.").

To survive summary judgment at step three, Terry had to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). We agree with the District Court that he failed to do so.

First, Terry failed to present any evidence from which a factfinder might reasonably conclude that the members of the body that actually fired him—the Borough Council—were motivated by racial animus. And although he identifies some different treatment of Mayor Jones-Butler and other members of the Council with respect to their own improper health insurance reimbursements,[6] these officials were elected and not subject to termination, and thus they are not similarly situated to Terry. *See id.* at 765 (explaining that a plaintiff may survive summary judgment by showing "that the employer treated other, *similarly situated* persons not of his protected class more favorably" (emphasis added)). Accordingly, any purported disparate treatment cannot serve as a basis for finding pretext.

---

[6] In 2013, the Pennsylvania State Ethics Commission found that Mayor Jones-Butler and some members of the Council had received improper reimbursements without suffering any adverse employment action.

Moreover, Terry offered no direct or circumstantial evidence from which an inference of discrimination could be drawn. When asked about the racial animus of the council members who voted to terminate him, Terry could not identify any basis for believing that they harbored hostility toward him and voted as they did based on race. As for Mayor Jones-Butler, Terry's brief on appeal urges—without any support—that the interracial nature of his marriage caused her to investigate. Without explanation, he rejects her testimony that she scrutinized the situation because she was curious as to why Terry would not have been more public with other borough employees and officials about his wedding. And while Terry alleges that interracial marriage in the Mayor's own family provides evidence of discrimination, this could just as easily cut the other way. At the very least, that some of the Mayor's family members are involved in interracial marriages does not give rise to any inference of discrimination.

Nor did the District Court err in rejecting Terry's due process claim. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). Here, the process that was required was a "pretermination hearing" explaining the evidence against Terry and providing him an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Such hearings need only allow for "a determination of whether there are

7

reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46 (citing *Bell v. Burson*, 402 U.S. 535, 540 (1971)). Terry received this process at the October 4 Council hearing. And his contention that additional process was required because the Council initially decided to retain him and then only later reversed course on November 4 is simply belied by the record.

For these reasons, we will affirm the District Court's judgment.