NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3986
_____

LINDA LACKEY,

Appellant

v.

HEART OF LANCASTER REGIONAL MEDICAL CENTER

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 5-15-cv-00415)
Honorable Jeffrey L. Schmehl, District Judge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
June 16, 2017

BEFORE:  JORDAN, KRAUSE, and GREENBERG, Circuit Judges

(Filed: July 27, 2017)
_____

OPINION*
_____

GREENBERG, Circuit Judge.

_____

*This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. INTRODUCTION

Plaintiff Linda Lackey appeals from the District Court's order granting summary judgment to her former employer, defendant Heart of Lancaster Regional Medical Center, on claims she brought alleging discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"). Lackey alleged that Heart of Lancaster terminated her employment because of her age and her disabilities. Heart of Lancaster successfully moved for summary judgment on all of her claims and this appeal followed.

For the reasons that we set forth below, we will affirm the District Court's order granting summary judgment to defendant Heart of Lancaster.

## II. FACTUAL BACKGROUND

Lackey, a woman now in her seventies, was an employee at Heart of Lancaster or its predecessors for nearly fifty years.[1] App'x at 120a, 178a. From 2006 until her termination, Lackey scheduled appointments for several departments at the hospital. Id. at 125a.

During her time as a scheduler, Lackey received consistent negative feedback in counseling sessions and performance reviews with her supervisors. During the 2006-2008 period, she received counseling about being more careful with her work and at least ten verbal counseling sessions for failing to complete paperwork properly and use correct

---

[1] We recount the facts without substantial input from Lackey, as she "incorporate[d] by reference the factual background in the district court's opinion" in her brief and did not include citations to the appellate record before us now. See Appellant's br. at 9.

forms.  Id. at 212a, 219a, 221a.

Lackey's performance evaluations during the period of 2008 through 2012 showed a similar theme.  She received an evaluation in 2008 ranking her as "[n]eed[ing] improvement" in over half of the areas related to scheduling.  Id. at 214a-17a.  In 2009, she received an evaluation rating her below 3 on a 5-point scale, on which scores below 3 meant "[p]artially meet[ing] performance standards," in a number of performance areas primarily relating to scheduling accuracy and attention to detail.  Id. at 223a-35a.  At the end of 2009, her performance evaluation highlighted the need to improve in those same areas.  Id. at 237a-48a.  Her 2011 evaluation reiterated issues with respect to Lackey's errors, attention to detail, and working with technology, resulting in a corrective action plan to be implemented by early 2012.  Id. at 253a-62a.  Her 2012 evaluation continued to list missed details, accuracy, and technology issues as problem areas.  Id. at 267a-77a.  Lackey's 2013 evaluation showed that she failed to meet performance standards regarding making errors, attention to detail, and her ability to use technology; her overall score was rated as needing "immediate improvement" and required placement on a performance improvement plan.  Id. at 334a-345a.

Lackey also received numerous specific written warnings for errors she made at work.  One warning from March 2011 addressed her failure to properly screen a patient for a procedure, resulting in inconvenience and a potential safety risk for the patient.  Id. at 250a-51a.  Several written warnings from February 2012, January 2013, and October 2013 addressed scheduling errors Lackey made which resulted in problems for patients and hospital staff.  Id. at 279a-80a, 285-86a, 282a-83a.

3

In November 2013, Lackey received a warning because of "multiple complaints that involve patients having to cancel [and] reschedule resulting in patient dissatisfaction" and because "[c]omplaints of substandard work have created reworking [for] co-workers and confusion among multiple departments." Id. at 291a. This warning was listed as "final" and the recommended corrective action was for all of Lackey's work to be reviewed by a co-worker and then sent back to her if there were errors to be corrected.[2] Id. at 291a-92a.

Lackey was placed on a performance improvement plan and received several months of additional oversight from late 2013 into early 2014. Id. at 352a. Nevertheless, she received a termination notice effective February 14, 2014, which listed the reason for the termination as continued repeated errors in scheduling patient appointments. Id. In May 2014, Heart of Lancaster hired a 41-year-old employee to fill Lackey's former position. Id. at 498a, 506a.

Lackey identifies several younger schedulers who worked at various points at Heart of Lancaster.[3] One of Lackey's younger co-workers testified that she made less than five mistakes in her seven months working for Heart of Lancaster but she was not disciplined for those mistakes. Id. at 514a-15a. A different younger worker who was in a

---

[2] After Lackey received this evaluation in or around December 2013, Heart of Lancaster implemented a new computer scheduling program, for which all of the schedulers received several hours of training. App'x at 144a-45a. Lackey testified at a deposition that she did not understand the new system "real well" and found it hard to learn but could not recall asking for any assistance with it. Id. at 145a, 149a.

[3] At the time of their depositions in 2015, these younger workers were 40, 43, and 30 years old, respectively. App'x at 513a, 506a, 522a.

training period testified to having made a mistake "at least once" without receiving formal discipline. Id. at 505a. Another younger co-worker who shared Lackey's supervisor for several years testified that the supervisor had spoken to her about "maybe an error or two that [she had] made and how to correct it" in those several years, without receiving more formal discipline. Id. at 524a. While this co-worker was assigned to assist Lackey with training for a new scheduling system, she testified to noticing Lackey make "repeated mistakes" and that she was sure that she had gotten frustrated with Lackey because Lackey "would make the same mistake again and again." Id. at 525a, 529a. She testified that during the course of reviewing Lackey's work, she reported back more than twenty mistakes that Lackey made to their shared supervisor. Id. at 526a. She testified that she was not assigned to help train the other scheduler at the time because any issues that other scheduler had "navigating the system" were "minor" and she was not having problems "to the degree that [Lackey] was." Id.

Lackey testified that sometime in July 2012, her supervisor asked her how old she was and if she was planning to retire. Id. at 165a. She also testified that this was the first time that her supervisor had raised the issue of her age. Id. at 166a. She sent an email to the director of human resources on July 24, 2012, stating that she was "getting incredible pressure to retire" and was being harassed by her supervisor. Id. at 264a-65a. She met with human resources and her supervisor about the incident. Id. at 167a-68a. Lackey claims that she felt that there was a "general atmosphere" pressuring her to retire but testified that no one made any other comments at any other point regarding her age or retirement. Id. at 166a-67a. She also testified that "some of the allegations" she made to

5

human resources in 2012, such as feeling like she was "being pushed out the door," might have been "an exaggeration." Id. at 168a.

Lackey's supervisor testified that while Lackey was still working at the hospital, she omitted a "smoky, musty odor that she tried to cover up with perfume" that she thought "was a smoking odor" and was "offensive sometimes." Id. at 199a. She testified that "anyone" who went into the room where Lackey worked would come to complain to her about the odor. Id. She spoke with Lackey about the odor by asking her "if she could not smoke with her windows up" when she was driving to work. Id. at 200a. One of Lackey's co-workers at the hospital also testified that Lackey had an odor but she did not complain about it or identify what it was. Id. at 516a. Another co-worker similarly testified that Lackey had a "very strong" odor that made it "hard to work in a small space," which the co-worker reported to the supervisor several times. Id. at 533a.

Lackey's supervisor further testified that at some unknown time while Lackey worked at Heart of Lancaster, Lackey told her that she had problems hearing on her headset. Id. at 202a. Lackey's supervisor testified that she asked Lackey if "we needed to make an evaluation" but Lackey said no and "thought that maybe getting a new headset would help her." Id. Lackey's supervisor ordered a new headset for her. Id. At some point, Lackey also told her supervisor that she had hearing aids. Id.

Lackey's supervisor observed that she saw that Lackey's hand was shaking on one occasion "while she was trying to type" and when she asked Lackey if "everything was okay," Lackey said she was fine. Id. at 204a. Her co-workers also observed a tremor or unsteadiness in her hand. Id. at 516a, 530a.

6

Finally, Lackey had an anxiety attack at work sometime in December 2013. Id. at 149a. She went outside for "a few minutes" and then came back to her work station. Id. at 150a. She testified that this happened "two or three other times" during her employment and that she did the same thing each time. Id. Her supervisor was only present for the anxiety attack in December 2013 and Lackey testified that a few days after it happened, her supervisor said that "with all those people in there, it really wasn't acceptable to get up and just leave the office." Id. at 151a. Lackey then told her that she had had an anxiety attack. Id. at 152a. Lackey did not recall talking to her supervisor about this issue at any other time. Id.

### III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 because the District Court's September 29, 2016 order was final.

We exercise plenary review over a district court's grant of summary judgment. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Therefore, our review is identical to that of the District Court. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). Under this standard, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

7

However, a mere "scintilla of evidence" does not create a genuine issue of fact. Id. at 252, 106 S.Ct. at 2512. "[T]he non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016).

## IV. DISCUSSION

### A. ADEA Discrimination

Lackey argues that she was terminated because of her age and that Heart of Lancaster's reason for her termination was pretext for age discrimination. The District Court held that no reasonable jury could conclude that Lackey's termination was pretext for age discrimination based on the comparator evidence she presented. App'x at 13a.

The ADEA prohibits an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). To state a prima facie case for age discrimination, a plaintiff must show that (1) she is more than forty years old; (2) she "was qualified for the position" in question; (3) she "was subject to an adverse employment action despite being qualified;" and (4) the adverse action occurred under circumstances that raise an inference of discriminatory action. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003). This inference may be drawn through the more favorable treatment of similarly situated employees outside of the protected class. Id. at 797 n.7. If a plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to show a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93

8

S.Ct. 1817, 1824 (1973). If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason for the decision is pretext. Id. at 804, 93 S.Ct. at 1825. A plaintiff must show "that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." Sarullo, 352 F.3d at 797. She must prove that age was the "but-for" cause of the employer's adverse decision to prevail on an age discrimination claim. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S.Ct. 2343, 2351 (2009).

For purposes of the consideration of the summary judgment motion, Heart of Lancaster has conceded that Lackey has stated a prima facie case of age discrimination, and Lackey has conceded that Heart of Lancaster has shown a legitimate, non-discriminatory reason for her termination. Thus, the only question remaining is whether Lackey has met her burden of showing that there remains a genuine issue of material fact over whether Heart of Lancaster's reason for her termination was pretext for age discrimination, based on principles of "but-for" causation.

Lackey argues that it is "abundantly clear" that her co-workers were treated better than she was treated, and thus that her termination was pretext for age discrimination. Appellant's br. at 15. For support, she argues that her younger co-workers constitute comparators and that they were treated more favorably than she was when they made mistakes. Id. at 15-20. The District Court concluded that in this case, "[d]efendant presented overwhelming evidence that [p]laintiff's employment was terminated for her ongoing poor work performance." App'x at 10a.

We agree with the District Court. Lackey does not dispute that during her time as

9

a scheduler for Heart of Lancaster from 2006 through 2014, she was consistently and repeatedly disciplined for issues regarding attention to detail, scheduling accuracy, and properly using forms and electronic scheduling programs. She does not claim that this discipline was discriminatory. Rather, she bases her sole argument on what she characterizes as her supervisor's better treatment of her co-workers when they made mistakes, while she was punished more severely for mistakes because of her age, leading to her termination. Appellant's br. at 15-20.

If a plaintiff relies on comparator evidence to establish pretext, "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096 (1981). In this case, Lackey has a record of discipline primarily for scheduling errors leading back to 2006, before she began working with her last supervisor. Her annual performance evaluations and written warnings highlighted that she had repeated difficulty meeting proficiency standards year after year, in the same areas, leading to serious problems for patients and the hospital.

In contrast, there is no evidence in the record that any of the other schedulers who worked in Lackey's department made comparable amounts of mistakes or those of a similar magnitude to Lackey's repeated errors. That Lackey's co-workers testified to having made a handful of mistakes without receiving formal discipline during the course of their work at Heart of Lancaster does not make them similarly situated. Additionally, the record is clear that Lackey herself was informally verbally counseled about mistakes she made, without formal write-ups, on a number of occasions. See App'x at 219a.

10

Because this is the only basis on which Lackey relies to establish pretext, it is insufficient to allow her claim to proceed beyond the summary judgment stage due to her eight-year record of repeated disciplinary action. Given the but-for causation standard applied to age discrimination claims, on this record, no reasonable jury could find that Heart of Lancaster's reason for Lackey's termination was pretext for age discrimination. Thus, the District Court properly granted summary judgment for Heart of Lancaster on Lackey's ADEA discrimination claim.

B. ADEA Retaliation

Next, Lackey argues that Heart of Lancaster retaliated against her by terminating her for complaining about her supervisor's comment about her age. The District Court held that Lackey could not state a prima facie case of retaliation after she complained of age discrimination because she could not establish a causal connection between her complaint and her termination nineteen months later. App'x at 15a-16a.

The ADEA makes it unlawful for employers to retaliate against employees who oppose age discrimination prohibited by the ADEA. 29 U.S.C. § 623(d). To state a prima facie case of retaliation under the ADEA, "a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action." Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005).

Heart of Lancaster does not dispute that Lackey's email complaining about her supervisor's comment about her age in July 2012 constitutes protected activity or that her

11

termination was an adverse employment action. Instead, Heart of Lancaster contends that Lackey cannot demonstrate a causal connection between her July 2012 email and her termination in February 2014. Lackey maintains that she can establish this connection through a pattern of antagonism in the intervening months between the email and her termination.[4]

"[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period." Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997). The only facts Lackey claims establish a pattern of antagonism are that she received an annual performance review "with some negative comments" in 2012 as well as "numerous write-ups" in 2013 from her supervisor and that a younger co-worker was assigned to review her work and not anyone else's after her performance evaluation in late 2013. Appellant's br. at 21-22.

Lackey's argument is unpersuasive because she received similar feedback on her scheduling errors both before and after July 2012. Her 2012 performance review and subsequent written warnings echoed the feedback she had consistently received between 2006 and 2011, noting Lackey's issues with attention to detail, scheduling accuracy, and

---

[4] In the District Court, Lackey also argued that she could establish causation through temporal proximity. The Court held that given the nineteen months that had passed between her complaint and her termination, "the time span between the protected activity and the alleged retaliation is too long to justify an inference of retaliation" on its own. App'x at 15a. On appeal, Lackey's only discussion of this issue states that "[e]ven assuming arguendo that the [D]istrict [C]ourt was correct on that [question], it erred by finding that there was not a pattern of antagonism." Appellant's br. at 20. Thus, she does not appear to challenge this finding on appeal, given that she provides no argument or briefing on this issue.

proficiency with technology, among others. See Shaner v. Synthes (USA), 204 F.3d 494, 504-05 (3d Cir. 2000) (finding that there was "no evidence that any of [the plaintiff's negative] evaluations was causally linked to [his protected activity] or that any of them was motivated by discriminatory or retaliatory intent" where the record showed that the plaintiff's "performance evaluations contained similar criticisms both before and after" he engaged in protected activity). The circumstance that Lackey's co-worker was assigned to help train her and review her work as Heart of Lancaster was switching to a new scheduling system, nearly a year and a half after her 2012 email and after years of repeated errors under the earlier scheduling system, does not demonstrate a pattern of antagonism. Thus, we agree with the District Court that Lackey cannot establish a prima facie case of ADEA retaliation based on a pattern of antagonism. The Court therefore properly granted summary judgment to Heart of Lancaster on this claim.

C. ADA Discrimination

Lackey also argues that Heart of Lancaster terminated her employment because it regarded her as disabled. The District Court held that Lackey did not produce evidence to indicate that her employer perceived her odor, tremor, anxiety attacks, or hearing issues as disabilities. App'x at 17a-18a.

To state a prima facie case of ADA discrimination, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010). The ADA defines a disability as "a physical or

13

mental impairment that substantially limits one or more major life activities of such individual;" "a record of such an impairment; or" "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Since its amendment in 2008, the ADA has further explained that an individual is "regarded as" disabled when "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A). However, this test does not apply to an impairment that is "transitory and minor"; an impairment is transitory when it has "an actual or expected duration of 6 months or less." Id. § 12102(3)(B).

Lackey first claims that the strong odor that her co-workers and supervisor noticed she emitted somehow constituted a disability. However, Lackey does not explain how the odor is connected to a claim that she was regarded as having a disability, particularly given that her supervisor thought that it was a "smoking odor" and none of her co-workers connected the odor to any medical condition or impairment. See App'x at 199a.

Next, Lackey argues that her hearing issues made her employer regard her as disabled. Lackey's supervisor testified that she knew that Lackey had issues hearing on her headset but remedied this by ordering her a new headset. Id. at 202a. She was also aware that Lackey had hearing aids. Id. Again, given that there is no evidence in the record that Lackey continued having issues hearing after she received a new headset or how long she had been having trouble hearing before she told her supervisor about it, there is no evidence that Lackey's impairment was anything but minor and transitory or that it substantially limited any major life activity.

14

Lackey also contends that her occasional hand tremor made her employer regard her as disabled. She maintains this despite her supervisor's testimony that she observed Lackey's hand shake on only one occasion and that it went away by the next day. Her co-workers also observed a tremor or unsteadiness, but there is no evidence in the record about its frequency. Again, without evidence in the record to indicate that Lackey's tremor substantially limited a major life activity and was not transitory and minor, it cannot support her claim.

Finally, Lackey argues that because she had experienced, at most, three or four anxiety attacks at work lasting a few minutes each, she was "regarded as" disabled. The record indicates that her supervisor observed only one of these anxiety attacks and that it lasted five to ten minutes at most, at which point she returned to work. Id. at 150a. There is no evidence of when the other attacks occurred or that her supervisor knew about any of the other anxiety attacks. Lackey does not explain how this substantially limited at least one major life activity, and her inability to recall when these attacks occurred similarly fails to support this impairment as one that was not minor and transitory.

The record does not show that Heart of Lancaster regarded Lackey as disabled. Further, even if Lackey had been able to show that she was seen as disabled by Heart of Lancaster, she has not indicated how she could establish the causation prong of her prima facie case. We can find no evidence in the record creating a genuine issue of material fact on the question of causation over whether Lackey was terminated because of any perceived disability and Lackey does not provide us with any argument or record

15

citations to the contrary. Thus, she cannot make out a prima facie case of disability discrimination under the ADA and summary judgment for Heart of Lancaster is proper.

D. ADA Retaliation

Finally, Lackey maintains that she was terminated in retaliation for informing her supervisor that she had experienced an anxiety attack and that she had issues hearing. The District Court held that she presented no evidence that she engaged in protected activity such that she could state a prima facie case of ADA retaliation. App'x at 18a-19a.

The ADA prohibits employers from retaliating against employees who have "opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a). As with the ADEA, to establish a claim for retaliation "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 (3d Cir. 2004) (citation and quotation marks omitted).

Lackey argues that telling her supervisor that she had experienced an anxiety attack and had trouble hearing constituted protected activity. Heart of Lancaster challenges Lackey's position that she engaged in protected activity and argues that even if she engaged in protected activity, she cannot show a causal connection between any protected activity and her termination.

First, Lackey's statement to her supervisor that she had had an anxiety attack does

16

not constitute protected activity — she does not even make an argument for how this could be construed as opposing conduct made unlawful by the ADA or a request for a reasonable accommodation. Thus, it cannot constitute protected activity.

Second, the record is murky about whether Lackey requested a new headset after she told her supervisor that she had been having issues hearing, or whether her supervisor independently ordered it and she accepted it; there does not appear to be any testimony from Lackey's perspective about this request. See App'x at 202a. Regardless, even assuming that she engaged in protected activity, she cannot establish the final prong of a prima facie case of ADA retaliation: a causal connection between any request for a reasonable accommodation and her termination. Even if Lackey made a request, there is no evidence about when it was made in relation to her termination and we see nothing in the record linking the request to her termination. Because she is unable to establish causation, Lackey cannot state a prima facie case of ADA retaliation. Therefore, summary judgment for Heart of Lancaster is proper.


V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to Heart of Lancaster on Lackey's ADEA and ADA claims.

17